**Ramon A. ABREU**

v.

**UNITED STATES of America.**

**Maria Orfilia FERNANDEZ**

v.

**UNITED STATES of America.**

**Claudia Luisa BELLO–RODRIGUEZ**

v.

**UNITED STATES of America.**

Civ. A. No. 92–0273 P to 92–0275 P.

United States District Court,
D. Rhode Island.

June 4, 1992.

Ramon A. Abreu, pro se.

Edwin J. Gale, U.S. Atty.'s Office, Providence, R.I., for defendants in Nos. 92–0273 P & 92–0275 P.

Scott A. Lutes, Providence, R.I., for plaintiff in No. 92–0274 P.

Zechariah Chafee, U.S. Atty.'s Office, Providence, R.I., for defendant in No. 92–0274 P.

Claudia Luisa Bello–Rodriguez, pro se.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

In three related cases, incarcerated aliens petitioned this Court for deportation hearings. The Court orders the Immigration and Naturalization Service ("INS") to carry out the mandate of 8 U.S.C. § 1252(i) and begin the deportation process as soon as possible for these plaintiffs.

### I

Mr. Ramon Abreu is a citizen of the Dominican Republic. On July 5, 1990, he was convicted on several criminal counts involving cocaine possession and distribution and possession of a sawed-off shotgun. At the time of conviction, he resided in Woonsocket, Rhode Island. This Court sentenced Abreu to twenty-three years imprisonment and nine years supervised release. The Court also ordered deportation of the defendant in conformity with 18 U.S.C. § 3583(d)(3); INS has filed a deportation detainer against Abreu. He is serving his sentence in Fairton, New Jersey.

Ms. Maria Fernandez is a citizen of Colombia. She lived in Providence, Rhode Island until her conviction on cocaine charges on December 7, 1990. This Court sentenced her to five years imprisonment with five years supervised release. The Court also ordered her deported at the earliest possible time under 18 U.S.C. § 3583(d)(3). INS filed a deportation detainer against her on July 2, 1990. Fernandez is serving her sentence in Lexington, Kentucky.

Ms. Claudia Bello–Rodriguez is a citizen of the Dominican Republic, but she had been living in Providence, Rhode Island as a legal alien. On September 30, 1988, she was convicted on heroin charges. This Court sentenced her to nine years imprisonment with four years of supervised release; the Court additionally ordered that she be deported at the earliest possible date after her release from prison. She serves her sentence in Lexington, Kentucky.

All three plaintiff-inmates filed their motions *pro se*. Fernandez and Bello–Rodriguez labeled theirs as Motions to Issue Mandamus; Abreu wrote a letter to the INS and the Court requesting a prompt deportation hearing. The Court treated the copy of the letter as a mandamus motion. The Court construes *pro se* pleadings liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980). The pleadings and motions of a *pro se* plaintiff are not held to the same strict standard as papers prepared by members of the bar. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir.1980). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

### II

Section 701 of the Immigration Reform and Control Act of 1986 ("the Act") provides:

In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General [through the Immigration and Naturalization Service] shall begin any deportation proceeding as expeditiously as possible after the date of conviction.

8 U.S.C. § 1252(i) (1988). Representative McKay introduced this section as a floor amendment with this explanation:

[Section 701] addresses a narrow but a very important issue. It has to do with illegal aliens who are convicted of drug-related crimes, who under Federal law should be deported and who, under the policies of the Immigration and Naturalization Service, should be deported on an expedited basis.

The policies require that deportation proceedings begin when a conviction takes place, the idea being that when the sentence is over, the person would be deported.

Now, unfortunately, the very opposite is happening. These people are not being deported; the expedited procedure is not working; .... This amendment provides ... that deportation proceedings will begin when there is a conviction.

132 Cong.Rec. H9794 (October 9, 1986).

In *Soler v. Scott*, 942 F.2d 597 (9th Cir. 1991), the Ninth Circuit gave this section of the Act and this very issue a complete review.[1]

Congress enacted Section 701 to accomplish a single objective: to require the INS to abandon its practice of postponing prisoner deportation hearings until after the expiration of a prisoner's sentence. Rather than deporting aliens promptly upon the expiration of their prison sentence, the INS waited until a prisoner completed his or her sentence before even scheduling a hearing to determine whether the prisoner would be deported.

*Soler v. Scott*, 942 F.2d at 600.

The three cases before this Court are not as clearly pled as the *Soler* case. However, the brevity of the pleadings does not deny the plaintiffs relief to which they are entitled. Although not explicitly stated, all three motions are based on the INS policy of waiting beyond the expiration of the prison term before initiating deportation proceedings. Not one of the government's three response briefs refutes the charge that it is INS policy to postpone commencement of deportation proceedings until *after* the incarceration period has elapsed.

■ The United States produced several responses to the three motions, each of which has little value.[2] First, the government argues that the Court should dismiss the motions for inappropriate venue under 28 U.S.C. § 1391(e). This is patently incorrect. Under the venue statute, a prisoner does not change residence to prison simply because she is incarcerated there. *See Ellingburg v. Connett*, 457 F.2d 240, 241 (5th Cir.1972); *Holmes v. United States Bd. of Parole*, 541 F.2d 1243, 1248–49 (7th Cir. 1976) (in mandamus action, district of domicile, not district of incarceration, controls proper venue); *Brimer v. Levi*, 555 F.2d 656, 657–58 (8th Cir.1977) (federal prisoner *not* a resident of the state where incarcerated). All three plaintiffs resided in Rhode Island prior to their involvement with the criminal justice system; venue is proper in this district.

Second, the government contends the Court should not intervene in Abreu's case while an appeal to the First Circuit is pending. The First Circuit affirmed the district court opinion on January 3, 1992; there is no longer any reason to avoid his motion.

Third, the government notes that there has been no violation of the Court's sen-

1. All three motions presently before the Court referred to and extensively quoted from this decision.

2. The Court appointed counsel for Ms. Fernandez and invited and received responses from the U.S. Attorney for all three motions. Lack of standing was *not* argued by the government.

However, for completeness, the Court notes this possible objection. Without quoting an entire section, the Court adopts the reasoning of the *Soler* court in Part IV of its opinion. Plaintiffs have standing under the Mandamus Act and the Administrative Procedure Act. *See Soler*, 942 F.2d at 605.

tencing order of deportation under 18 U.S.C. § 3583(d)(3). As will be discussed in detail in the next section, these motions set forth a claim for mandamus, not for a perceived violation of the sentences.

Finally, the government contends that Fernandez and Bello–Rodriguez seek deportation, not merely a deportation hearing, and, because of this, the Court should dismiss their motions out of hand.

This final contention deserves some consideration. Plaintiffs Fernandez and Bello–Rodriguez ask to be deported "as soon as possible." Unquestionably, they would like to be deported prior to the completion of their respective sentences. This the Court cannot and would not order. *See* 8 U.S.C. § 1252(h). However, in order to be deported "as soon as possible," (i.e. after completing their sentences), the INS must hold deportation hearings sometime between conviction and the date of release. If, as alleged, it is INS policy to stall these proceedings until after the date of release, the Court has no qualms interpreting these motions as mandamus requests for deportation hearings.

### III

■ There can be no doubt as to the mandatory language in the statute. "[T]he Attorney General [through the INS] *shall* begin any deportation proceedings as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1252(i) (emphasis added). Mandatory language indicates a congressional limitation on agency discretion. *See United States v. Chavez*, 627 F.2d 953, 954–44 (9th Cir.1980), *cert. denied*, 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981); *cf. National Resources Defense Council, Inc. v. Environmental Protection Agency*, 478 F.2d 875, 885 (1st Cir.1973) (under Clean Air standards, limitless discretion to grant exemptions frustrates congressional intent). The language "after the date of conviction" clearly signals that this date—not the date of release—is the focus of the section. *See Soler*, 942 F.2d at 601.

The phrase "as soon as possible" gives discretion to the INS in scheduling deporta-

tion proceedings. However, this discretion cannot be so sweeping as to effectively ignore the "date of conviction" language. INS' apparent interpretation of Section 701 is entitled to no deference. Courts "must reject administrative constructions which are contrary to clear congressional intent." *Chevron U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984). "Congress plainly did not intend to adopt the very policy it was forbidding." *Soler*, 942 F.2d at 601.

■ The Court concludes, as did the Ninth Circuit in *Soler*, that the plaintiffs' motions state a cause of action under the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Mandamus is the appropriate method of compelling the INS to schedule deportation hearings consistent with Section 701 of the Act, 8 U.S.C. § 1252(i).

### A. THE MANDAMUS AND VENUE ACT

Congress passed the Mandamus and Venue Act, 28 U.S.C. § 1361, in 1962. The Act provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel any officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Prior to the passage of the Act, district courts outside the District of Columbia lacked subject matter jurisdiction over mandamus actions. *See generally Driver v. Helms*, 577 F.2d 147, 151 (1st Cir.1978), *rev'd. on other grounds*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).

■ Mandamus actions force a court to address jurisdiction in a slightly unusual manner. "In mandamus actions, the usually separate questions of jurisdiction and failure-to-state-a-claim merge. There can be no mandamus jurisdiction if no 'duty' exists on the part of the defendants. On the other hand, if a duty does exist, then not only is there jurisdiction under 1361 but

plaintiff has also adequately stated a claim in asking that such duty be fulfilled. *Davis Assocs., Inc. v. Secretary, Dep't. of Hous. and Urban Dev.*, 498 F.2d 385, 388 (1st Cir.1974). Mandamus may issue when there exists a ministerial, clearly defined, and peremptory duty on the part of the defendant to do the act in question, and no other adequate remedy is available. *Cervoni v. Secretary of HEW*, 581 F.2d 1010, 1019 (1st Cir.1978). Recent judicial trend, however, expands the traditional review of agency actions into the area of discretion. *Conservation Law Found. of New England v. Clark*, 590 F.Supp. 1467, 1472 (D.Mass.1984).

■■■■ A court may not use mandamus to control an official's discretion. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170–71, 2 L.Ed. 60 (1803). "Mandamus is appropriate when an official's duty to act is ministerial in nature and so plain as to be free from doubt. This does not mean an official's conduct is unreviewable because the official's responsibilities are in some respects discretionary." *Soler*, 942 F.2d at 602 (citations omitted). The Supreme Court recognized this principle long ago. "[A] duty may be discretionary within limits. [The official] can not transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them.... [The] extent [of the officer's discretion] and the scope of judicial action in limiting it depend upon a proper interpretation of the particular statute and the congressional purpose." *Work v. United States ex rel. Rives*, 267 U.S. 175, 177–78, 45 S.Ct. 252, 252–53, 69 L.Ed. 561 (1925). "In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated." *Davis Assocs.*, 498 F.2d at 389 n. 5.

In enacting Section 701, Congress intended deportation proceedings to begin when

an alien is convicted. In this manner, after a deportable alien serves her sentence, she would be deported without delay.[3] The United States government, through the INS, abrogates its statutory duty by delaying deportation hearings until the expiration of a prison term. "Mandamus is an appropriate remedy to compel compliance with Congress' unequivocal mandate." *Soler*, 942 F.2d at 603.

## B. THE ADMINISTRATIVE PROCEDURE ACT

Plaintiffs are also entitled to relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. None of the plaintiffs mention the APA in their motions, but in *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 228 & 231 n. 4, 106 S.Ct. 2860, 2865 & 2866 n. 4, 92 L.Ed.2d 166 (1986), the Supreme Court treated a petition filed under the Mandamus Act (by an attorney) as a claim for relief under the APA. The Court reasoned that the two forms of relief were "in essence" the same. The *Soler* panel also adopted this approach. *Soler*, 942 F.2d at 603 n. 3. *See also Carpet, Linoleum and Resilient Tile Layers v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981) (the mandatory injunction sought was "essentially in the nature of mandamus" and its issuance could be based on mandamus or the APA or both).

5 U.S.C. § 704 limits judicial review to "final agency action." In this case, INS policy "represent[s] 'agency recalcitrance ... in the face of a clear statutory duty ... of such magnitude that it amounts to an abdication of statutory responsibility' ... [and] 'the court has the power to order the agency to act to carry out its substantive statutory mandates.'" *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C.Cir.1987) (quoting *Public Citizen Health Research Group v. Commissioner, Food & Drug Admin.*, 740 F.2d 21, 32 (D.C.Cir.1984). An agency might forever evade review of unlawful and unreasonable delay if courts waited for "finality" in such a situation. *See Soler*, 942 F.2d at 603–04.

---

**3.** Indeed, this is what many district judges attempt when ordering deportation as a condition of supervised release under 18 U.S.C. § 3583(d)(3). There is little, if any, evidence that the INS heeds this type of order.

Additionally, both the APA and the Mandamus Act expressly create the right of action at issue. "[A] petitioner who has alleged a cause of action under the APA or the Mandamus Act need not rely upon an implied private right of action under any other statute." *Id.* at 604–05. Plaintiffs "do not seek recognition of a supplemental private enforcement mechanism. They do not seek damages for specific acts of discrimination against themselves. They ask only that the court review … an ordinary element of administrative enforcement schemes.... The reluctance of courts to imply private enforcement rights … is not applicable." *Legal Aid Society of Alameda County v. Brennan*, 608 F.2d 1319, 1332 (9th Cir.1979).[4]

### IV

In addition to the legal considerations discussed above, the Court's decision reflects two important policy objectives. The first policy goal affects the prisoners themselves. If the INS delays deportation proceedings, the government can force aliens to remain incarcerated even after they have served their sentences and "paid their debt to society." The second policy objective puts a different spin on the same scenario. The government wastes precious resources—not merely money, but prison space and personnel attention—if aliens must remain in custody or under supervised release when they should have been deported immediately upon release from incarceration. INS' "waiting" policy serves neither the prisoners nor the government.

The Court issues a writ of mandamus ordering the INS to conduct deportation hearings as soon as possible for these plaintiffs and not to wait for their release.

SO ORDERED.

---

**4.** Neither the United States Supreme Court nor the Court of Appeals for the First Circuit has addressed this issue. The Court agrees with the reasoning of the Ninth Circuit contained in *Soler v. Scott*, 942 F.2d 597 (9th Cir.1991), but three other courts have concluded that § 1252(i) does not create a private cause of action under the Mandamus and Venue Act. *See Aguirre v. Meese*, 930 F.2d 1292 (7th Cir.1991); *Gonzalez v. United States Immigration and Naturalization Service*, 867 F.2d 1108 (8th Cir.1989); *Medina v. United States*, 785 F.Supp. 512 (E.D.Penn.1992).