Rodolfo HERNANDEZ–AVALOS,
et al., Petitioners–Appellants,

v.

IMMIGRATION AND NATURAL-
IZATION SERVICE, et al.,
Respondents–Appellees.

Nos. 94–1051, 94–1060, 94–
1061 and 94–1066.

United States Court of Appeals,
Tenth Circuit.

March 9, 1995.

Michael G. Katz, Federal Public Defender, Vicki Mandell–King, Asst. Federal Public Defender, Denver, CO, for petitioners.

Frank W. Hunger, Asst. Atty. Gen., Mark C. Walters, Asst. Director, Office of Immigration Litigation, Alison R. Drucker, Attorney, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, DC, for respondents.

Before HENRY and LOGAN, Circuit Judges, and REED, District Judge.[1]

EDWARD C. REED, Jr., Senior District Judge.

The petitioners-appellants are four aliens serving federal prison sentences. Each alien, having been convicted of a deportable offense and citing 8 U.S.C. § 1252(i), sought a writ of mandamus from the District Court, compelling the Immigration and Naturalization Service (INS) to initiate deportation proceedings. The District Court dismissed the appellants' cases for lack of jurisdiction, explaining that, because the statute itself provided no criteria for evaluating the government's actions and there were no relevant regulations, there was "no law to apply" to their cases and thus no way to fashion a remedy.

The cases were consolidated for purposes of appeal. In this court, the briefing on both sides has focused primarily on a jurisdictional question: whether the appellants have standing to seek mandamus. They do not, and the case can be resolved on that basis.

The underlying substantive statute, 8 U.S.C. § 1252(i), provides that "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceedings as expeditiously as possible after the date of conviction." The appellants' complaint is that the INS, rather than beginning deportation proceedings "expeditiously" after an alien's conviction of a deportable offense, has a policy, which it has

---

1. The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

followed here, of not beginning those proceedings until the alien has finished serving the prison sentence resulting from the conviction. The result is that the alien, having served his sentence and awaiting deportation, remains in INS custody longer than he would had deportation proceedings been initiated expeditiously after his conviction.[2]

■ On October 25, 1994, President Clinton signed into law the Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416, 108 Stat. 4305. Section 225 of that statute provides that

> [n]o amendment made by this Act and nothing in section 242(i) of the Immigration and Nationality Act (8 U.S.C. 1252(i)) shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

At a minimum, the statute makes clear that there is no private right of action under § 1252(i). But we think it does more than that. It imposes upon § 1252(i) a mandatory rule of construction compelling the conclusion that the statute creates *no* right or benefit enforceable by *any* party against the federal government or *anyone* else. The statute, in short, makes clear that Congress intended that *no one* be able to bring suit to enforce § 1252(i), which means that no one can satisfy the zone of interests test, and therefore no would-be plaintiff has standing to bring suit, either directly under the statute or by way of the Mandamus Act.[3]

There is, moreover, an alternative basis for affirming the district court's decision. Put simply, it is that the appellants in this case would lack standing to sue even if Section 225, described above, had never been enacted. The reasons are complex and we set them forth at some length.

■ There is no private right of action directly under § 1252(i).[4] The appellants concede this and instead seek to enforce § 1252(i) by means of relief issued pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361 (the "Mandamus Act").[5] We think that standing to seek mandamus in this case is governed by the "zone of interests" test applicable in cases brought under the Administrative Procedure Act (APA), for three reasons. First, it makes good sense to treat claims for relief against government agencies—whether made under the Mandamus Act or under the APA—identically with respect to standing. The two statutes are, after all, merely different means of "compelling an agency to take action which by law it is required to take." *Soler v. Scott,* 942 F.2d 597, 605 (9th Cir.) *vacated sub nom. Sivley v. Soler,* —— U.S. ——, 113 S.Ct. 454, 121

---

2. It should be noted that the appellants seek only to expedite the initiation of deportation proceedings against them. They do not claim a right to be deported before they finish serving their prison sentences. Nor could they, given section 1252(h)'s instruction that "[a]n alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by release from confinement." 8 U.S.C. § 1252(h).

In their brief, the appellants quote an order issued by the District Court which at least suggests that they committed aggravated felonies. In the case of aggravated felons, Congress has set as a goal the completion of deportation proceedings before the term of imprisonment ends, rather than merely the initiation of such proceedings as soon as possible after conviction. *See* 8 U.S.C. § 1252a(d)(1). The appellants rely entirely on § 1252(i). They do not mention § 1252a(d)(1) and we do not consider it.

3. There is no issue of retroactivity, because the aliens seek only prospective relief (mandamus),

and the court cannot mandate observance in the future of an asserted statutory right which, even assuming that it existed at some point in the past, clearly no longer exists. *See Nader v. Saxbe,* 497 F.2d 676, 680–81 (D.C.Cir.1974).

4. *See* Immigration and Nationality Technical Corrections Act, Pub.L. No. 103–416, § 225, 108 Stat. 4305, 4324 (1994) (discussed *infra*); *see also Aguirre v. Meese,* 930 F.2d 1292, 1293 (7th Cir.1991) (no private right of action); *Prieto v. Gluch,* 913 F.2d 1159, 1165–66 (6th Cir.1990) (same); *Orozco v. INS,* 911 F.2d 539, 541 (11th Cir.1990) ("an incarcerated alien has no private right of action under section 1252(i)").

5. The writ of mandamus has been abolished, but "[r]elief heretofore available by mandamus" may be sought in an "appropriate action." Fed. R.Civ.P. 81(b). The district courts have original jurisdiction in actions "in the nature of mandamus" pursuant to 28 U.S.C. § 1361. We thus refer to relief sought under § 1361 simply as "mandamus."

L.Ed.2d 364 (1992).[6]  Second, other circuits have come to the same conclusion.[7]  Third, the conclusion follows naturally from this court's prior holding that

> [a] mandatory injunction [issued under the APA] ... is essentially in the nature of mandamus.  Thus, jurisdiction for its issuance can be based on either § 1361 or § 1331, or both.

With these jurisdictional bases, and whether we label the relief sought as mandamus or a mandatory injunction, the issue remaining is whether defendants here have failed to discharge a duty owed to plaintiffs which Congress has directed them to perform.

*Carpet, Linoleum and Resilient Tile Layers Local 419 v. Brown,* 656 F.2d 564, 566–67 (10th Cir.1981) (citations omitted).  That relief "in the nature of mandamus" and mandatory injunctions are regarded as essentially equivalent remedies suggests that standing to seek each ought to be judged by the same standards.[8]

■ Further, the appellants can seek mandamus despite the absence of a private right of action under § 1252(i).  That is not a generally accepted proposition,[9] but we think that it is the law.  In *Soler,* 942 F.2d at 605, the Ninth Circuit held that "a petitioner who has alleged a cause of action under the APA or the Mandamus Act need not rely upon an implied right of action under any other stat-

---

6.  *See generally* Paul M. Bator, et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1091 (3rd ed. 1988):

> The development of remedies against federal officials and agencies follows two important paths.  The first, nonstatutory review, involves the system of remedies generally available against any defendant in judicial proceedings.  The remedies may be derived from the common law ... or from a statute.  The second path, statutory review, involves more specialized remedies created by Congress for the distinctive purpose of reviewing the actions of federal officials or agencies.

Mandamus is a form of nonstatutory review; the Administrative Procedure Act authorizes statutory review of agency action generally.  *Id.* at 1091–97.

> The weight of scholarly authority suggests that mandamus and mandatory injunctions ought to be judged by the same standards, *see id.* at 1094–95, or even that mandamus adds nothing to what is already available by injunction under 28 U.S.C. § 1331 (the federal question statute) and ought to be abolished entirely.  *See* 4 Kenneth C. Davis, *Administrative Law Treatise* §§ 23:8–:14 (2nd ed. 1978); III Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 18.4, at 180–81 (3rd ed. 1994) (mandamus a "largely outmoded remedy"; counsel ought simply to ask for an injunction).

7.  *See Giddings v. Chandler,* 979 F.2d 1104, 1108, 1110 (5th Cir.1992) ("a duty is owed to the plaintiff for the purpose of the Mandamus Act if—but only if—the plaintiff falls within the 'zone of interest' of the underlying statute"; "standing under the APA is determined by applying the same 'zone of interest' test as applied to determine standing in the mandamus context"); *Soler,* 942 F.2d at 604–05 (*citing Jarecki v. United States,* 590 F.2d 670, 675 (7th Cir.1979) (Wisdom, J.)) ("a duty is 'owed to the plaintiff,'" and the plaintiff thus has standing under the Mandamus Act, "if the plaintiff falls within the 'zone of

interests' protected by the underlying statute"; "both the APA and the Mandamus Act" are "means of compelling wrongfully withheld agency action," and there is no reason to infer that they have "differing standing requirements").

8.  The appellants in this case have not made a claim under the APA.  That may be because, under the exclusivity provision of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(b), "the APA is not applicable to deportation proceedings under the INA," *Kaczmarczyk v. INS,* 933 F.2d 588, 595 (7th Cir.1991); *see generally Ardestani v. INS,* 502 U.S. 129, 131–35, 112 S.Ct. 515, 518–19, 116 L.Ed.2d 496 (1991), and the INS has in the past asserted that the APA does not govern adjudicatory proceedings under § 1252.  *See Giddings,* 979 F.2d at 1110 n. 44.

9.  Several courts faced with petitions for mandamus to enforce § 1252(i) have denied the remedy precisely *because* there is no private right of action under the statute.  *See, e.g., Gonzalez v. INS,* 867 F.2d 1108, 1110 (8th Cir.1989) (no private right of action, so no mandamus available); *Alvaro–Gallo v. U.S.,* 814 F.Supp. 1019, 1020 (W.D.Okl.1993) (no private cause of action enforceable through mandamus); *Medina v. United States,* 785 F.Supp. 512, 514 (E.D.Pa. 1992) ("[section] 1252(i) does not create a private cause of action in favor of persons in [the alien's] position under ... the Mandamus and Venue Act").

> Other courts have decided not to decide.  *See, e.g., Rodriguez v. U.S.,* 994 F.2d 110, 111 (2nd Cir.1993) (case mooted by issuance of a final deportation order; court did not decide "whether a criminal alien has any private right of action under § 1252(i) or any standing to seek mandamus"); *Giddings,* 979 F.2d at 1107 n. 22 (declining to decide "whether a private right of action is required for mandamus relief" under § 1361); *Giraldo v. INS,* 869 F.Supp. 396 (E.D.Va.1994).

ute." The *Soler* court relied on *Legal Aid Society of Alameda County v. Brennan,* 608 F.2d 1319 (9th Cir.1979), in which the appellees did "not seek recognition of a supplemental private enforcement mechanism," *id.* at 1332, but, rather, review of the alleged failure of government officials to perform non-discretionary duties. "The reluctance of courts to imply separate private enforcement rights from statutes ... which provide explicitly only for government enforcement procedures and penalties," the court explained, was thus "not applicable." *Id.*

As noted above, *Soler* was vacated, and the Ninth Circuit has recently expressly declined to decide "whether a plaintiff who lacks a private right of action under the underlying statute might nevertheless be able to show the clear right to relief required under the Mandamus Act." *Barron v. Reich,* 13 F.3d 1370, 1375 (9th Cir.1994).[10]

■ We agree with the *Soler* court's reasoning on this point: a plaintiff "who has alleged a cause of action under the APA or the Mandamus Act need not rely upon an implied right of action under any other statute." Moreover, because mandamus is properly sought where government officials "owe a duty" to the plaintiff, and because a "duty" is "owed" in the administrative context if the plaintiff's interest is within the "zone of interests" protected by the underlying statute, all a plaintiff seeking mandamus in administrative litigation need show is that the interest he seeks to vindicate falls within the statutory zone of interests.

There are three reasons for this conclusion. First, it follows from prior decisions in which this court has held that (1) a plaintiff who lacks a private right of action under the underlying statute can bring suit under the APA to enforce the statute, *see Sierra Club v. Hodel,* 848 F.2d 1068, 1076 (10th Cir.1988), and (2) that "[a] mandatory injunction [issued under the APA] ... is essentially in the nature of mandamus." *Carpet, Linoleum and Resilient Tile Layers,* 656 F.2d at 566–67.

Second, both the "zone of interests" and "private right of action" inquiries relate to

the problem of third-party standing, but they arise in different procedural contexts. The zone of interests test originated, and is useful primarily, in the context of administrative litigation under the APA. *See Ass'n of Data Processing Orgs. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Given the APA's generous provisions for review, the test operates as a fairly weak prudential restraint, requiring some non-trivial relation between the interests protected by the statute and the interest the plaintiff seeks to vindicate. *See Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). The "private right of action" argument, by contrast, typically is made in *non*-administrative litigation, where "the zone-of-interests test is simply a restatement of the general rule against third-party standing." *See* Laurence H. Tribe, *American Constitutional Law* § 3–19, at 144 & n. 70 (2nd ed. 1988). Faced with a statute whose enforcement is (arguably) entrusted solely to the government and which thus contemplates only the government as a plaintiff, the would-be private plaintiff argues for implication of a private right of action—i.e., "recognition of a supplemental private enforcement mechanism," *Legal Aid Society,* 608 F.2d at 1332—which will allow him to proceed where he would otherwise be barred by the rule against third-party standing.

■ Third, it is more difficult to establish a private right of action than to demonstrate that one's interest falls within the zone of interests protected by the statute. A "private right of action" inquiry asks, *inter alia,* whether the plaintiff is a member of the class for whose benefit the statute was enacted, whether the legislative history indicates an intent to create or deny such a remedy, and whether implication of a private right of action would be consistent with the underlying purposes of the statute. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). On the other hand, the essential inquiry in the zone of interests test in this circuit is whether "Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law," and there need be "no indication of

10. *But see Abreu v. U.S.,* 796 F.Supp. 50, 53–55    (D.R.I.1992) (following *Soler* ).

congressional purpose to benefit the would-be plaintiff." *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1452 (10th Cir.1994) (*quoting Clarke,* 479 U.S. at 399–400, 107 S.Ct. at 575) (citations omitted) (internal quotation marks omitted). Thus, while neither test is a model of precision, it seems clear that a plaintiff can satisfy the "zone of interests" test while failing to meet the standard for implication of a private right of action. Because standing under the Mandamus Act in administrative litigation requires only satisfaction of the "zone of interests" test, it would make no sense to require the would-be plaintiff to satisfy the more difficult *Cort* test for implication of a private right of action under the underlying statute.

The question, then, is whether the appellants satisfy the zone of interests test.[11] That test has recently been summarized as follows:

> The essential inquiry is whether Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law. The zone of interest test is a guide for deciding whether, in

view of Congress's evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. The test is not meant to be especially demanding, and there need be no indication of congressional purpose to benefit the would-be plaintiff. A court must look at both the specific purpose of the statute and the more general purpose of the act in which the statute is contained to determine whether a plaintiff's injury falls within the zone of interests protected by the statute.

*Mount Evans Co.,* 14 F.3d at 1452 (*quoting Clarke,* 479 U.S. at 399–400, 107 S.Ct. at 757) (emphasis added) (citations omitted) (internal quotation marks omitted).

■ Section 1252(i) was enacted not for the benefit of incarcerated aliens, but for the benefit of taxpayers, the objective being to save money at the federal, state and local levels by deporting criminal aliens as soon as their sentences ended, thus avoiding the expense of housing and feeding them while they awaited deportation.[12] No matter who

---

11. Only the Fifth and Ninth Circuits have considered the question in § 1252(i) cases; they have reached opposite conclusions. In *Soler,* the Ninth Circuit conceded that § 1252(i) was enacted for the benefit of taxpayers, not incarcerated aliens. *Soler,* 942 F.2d at 605. However, the court focused on the element of the zone of interests test which allows standing "if the plaintiff's interest has a plausible relationship to the policies underlying the statute." *Id.* (*quoting Clarke,* 479 U.S. at 399, 107 S.Ct. at 757) (internal quotation marks omitted). It held that the "plausible relationship" test was satisfied, and the plaintiff had standing, because "the suit advances the stated congressional purpose of reducing prison overcrowding caused by INS delay." *Id.*

The Ninth Circuit's reasoning is not persuasive. That Soler's suit, if successful, would advance the purpose of the underlying statute has much to do with whether Soler would suffice as a third-party plaintiff—a question not at issue—but little to do with the separate question whether Soler's interest was of the type protected by the statute. And the answer to the latter question is that it was not: Soler's interest was in speedy release from confinement; § 1252(i) was enacted in order to ease financial burdens on federal, state and local prisons resulting from lengthy detention of aliens awaiting deportation. Vindication of Soler's interest would thus further the statute's goal, but Soler's interest was plainly

very different from that goal. That they coincided should not have been dispositive.

After declining to decide "whether a private right of action is required for mandamus relief," *Giddings,* 979 F.2d at 1107 n. 22, the Fifth Circuit explained that § 1252(i) was enacted to further the purposes of saving taxpayer money and reducing prison overcrowding. The petitioners, the court ruled, were not entitled to mandamus because they did not fall within the relevant zone of interests, for a variety of reasons. *See id.* at 1109–10. The Fifth Circuit's conclusion was correct, but, of the reasons it gave for its conclusion that the zone of interests test was not satisfied, only one—which might have been offered in direct response to the Ninth Circuit's rationale in *Soler*—is convincing: the fact that a suit by an alien may advance a statute's purposes does not mean that the interest the alien seeks to vindicate is within the zone of interests protected by the statute.

12. The legislative history makes this clear:

> These people are not being deported; the expedited procedure is not working; the local and State jails are jammed up, the Immigration and Naturalization Service has no incentive to give priority to these because the burden of inaction falls on State and local governments and not on the Federal system.

132 Cong.Rec. H9794 (daily ed. Oct. 9, 1986) (statement of Rep. MacKay).

the statute was intended to benefit, however, the "essential inquiry is whether Congress intended for a particular class of plaintiffs to be relied upon" to challenge the INS's disregard of the statute's mandate.

In this case, it is doubtful that Congress intended that the statute would be enforced by incarcerated aliens. There are two primary reasons. First, because the statute was enacted for the benefit of federal, state and local prison systems, the officials who run those systems would seem to be the "natural" (albeit nominal) plaintiffs in any suit to enforce § 1252(i), as their interests are clearly among those protected by the statute.[13] Second, and more important, § 1252(i) confers considerable (though, of course, not unlimited) discretion on the INS. It seems to us extremely unlikely that Congress would have wanted the INS's discretion in prioritizing deportation cases to be upset by individual suits brought by aliens seeking to expedite the handling of their own cases.

Because this suit is barred by § 225 of the Immigration and Nationality Technical Corrections Act of 1994, and because, even absent that statute, the appellants would not satisfy the zone of interests test and would thus lack standing to bring suit, the district court's dismissal of the case is AFFIRMED. In light of our disposition of this case, the government's motion for summary affirmance is DISMISSED as moot.

---

Not only will the Federal prison system benefit from an enhanced program to deport aliens in its custody, but even if greater benefits can be anticipated at the State and local level, if the program can reach that far. It may well be that a supplemental request may be necessary to provide for additional personnel and resources to expedite these deportations. However, any such increases would be but a small fraction of the cost to provide prison and jail space for these individuals.

132 Cong.Rec. S16,908 (daily ed. Oct. 17, 1986) (statement of Sen. Simpson). Other courts have come to the same conclusion. *See, e.g., Soler,* 942 F.2d at 605 ("[section 1252(i)] was apparently enacted for the benefit of taxpayers rather than incarcerated aliens"); *Prieto,* 913 F.2d at 1165 ("Congress did not intend to benefit criminal aliens when it enacted section 1252(i)").

**13.** That these potential plaintiffs would likely pursue their grievances through the political process, not litigation, does not alter the analysis.