**UNITED STATES of America, Plaintiff,**

v.

**Omar LOPEZ, Defendant.**

**No. 92 CR 902–2.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 27, 1996.

Asst. U.S. Atty. Diane Saltoun, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Robert S. Bailey, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

The defendant, Omar Lopez, was convicted on May 6, 1993, upon a plea of guilty, of conspiracy to possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 846. He was sentenced to 135 months imprisonment to be followed by five years of supervised release. He is currently confined at the Federal Correctional Institution at Pekin, Illinois. Mr. Lopez is, according to the evidence before this Court at the time we entered the detention order and later denied his motion for pretrial release, an illegal alien who had been in this country for about two months at the time of his arrest.[1]

At the time of sentencing, the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1524, prohibited the deportation of any alien sentenced to imprisonment until the alien is released from confinement. 8 U.S.C. § 1252(h). Section 1252(h) was amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, § 438(a), 110 Stat. 1214, 1275–76 (Apr. 24, 1996) (to be codified at 8 U.S.C. § 1252(h)) and now reads:

(1) Except as provided in paragraph (2), an alien sentenced to imprisonment may not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, supervised release, probation, or possibility of rearrest or further confinement in respect of the same offense shall not be a ground for deferral of deportation.

(2) The Attorney General is authorized to deport an alien in accordance with applicable procedures under this Act prior to the completion of a sentence of imprisonment—

(A) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (i) the alien is confined pursuant to a final conviction for a nonviolent offense (other than alien smuggling), and (ii) such deportation of the alien is appropriate and in the best interest of the United States; or

(B) in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (i) the alien is confined pursuant to a final conviction for a nonviolent offense (other than alien smuggling), (ii) such deportation is appropriate and in the best interest of the State, and (iii) sub-

---

1. The defendant's country of nationality is not apparent in the record.

mits a written request to the Attorney General that such alien be so deported.

(3) Any alien deported pursuant to this subsection shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens deported under paragraph (2).[2]

In light of this amendment, the defendant now moves for an immediate order of deportation pursuant to section 1252(h)(2)(A). He states that he is ready and willing to waive his right to deportation hearings before the completion of his sentence and that he is aware of the amendment to 8 U.S.C. § 1326, which provides that any alien deported pursuant to section 1252(h)(2) who

enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be incarcerated for the remainder of the sentence of imprisonment which was pending at the time of deportation. . . .

Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, § 438(b), 110 Stat. 1214, 1276 (Apr. 24, 1996) (to be codified at 8 U.S.C. § 1326(c)).

The principal problem with Mr. Lopez's motion is that we have no jurisdiction to enter the order he desires. We note first that the amended section 1252(h) expressly conditions any deportation of an alien sentenced to imprisonment on the determination by the Attorney General that (1) the alien has been convicted of a non-violent offense; and (2) such deportation is appropriaté and in the best interest of the United States. Mr. Lopez has not indicated in his motion that the Attorney General has made either determination in his case—and if the Attorney General had, it is unlikely that Mr. Lopez would be before us now.

More importantly, nothing in the language of section 1252(h), as amended, confers on an alien a private right of action to seek deportation. In reaching this conclusion, we look to the companion provision of the Immigration and Nationality Act that directs the Attorney General to begin deportation proceedings for aliens convicted of an offense subjecting him to deportation:

In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of conviction.

8 U.S.C. § 1252(i).

It is well settled that this provision does not confer a private right of action on an alien seeking deportation. *Aguirre v. Meese,* 930 F.2d 1292 (7th Cir.1991); *Hernandez–Avalos v. INS,* 50 F.3d 842 (10th Cir.1995); *Prieto v. Gluch,* 913 F.2d 1159 (6th Cir.1990); *Gonzalez v. INS,* 867 F.2d 1108 (8th Cir. 1989). These cases collectively set forth several independent grounds for the conclusion that no private right of action exists under section 1252(i):

1. Any private right of action that might otherwise be found to exist is precluded by the Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416, 108 Stat. 4305 (1994), section 225 of which states:

[n]o amendment made by this Act and nothing in section 242(i) of the Immigration and Nationality Act (8 U.S.C. 1252(i)) shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

*See Hernandez–Avalos,* 50 F.3d at 844.

2. The Statute does not satisfy the four-factor test set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), for determining whether a private right of action is implicit in a federal statute. *Prieto,* 913 F.2d at 1165; *Gonzalez,* 867 F.2d at 1109–10. The four factors to be considered are: (1) whether the statute was enacted for the benefit of a special class to which plaintiff belongs; (2) whether there is any indication of legislative

---

**2.** The previous version of section 1252(h) consisted only of paragraph (1) following the introductory clause.

intent to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the cause of action is one traditionally relegated to state law in an area basically the concern of the states. The *Prieto* court found that the language of the statute and its legislative history indicate that Congress did not intend to benefit criminal aliens when it enacted section 1252(i), but rather the statute was meant to address the balance of state versus federal responsibility for incarcerated aliens subject to deportation, to help control the flow of drugs into the United States, and to ameliorate the problem of overcrowded prisons. *Prieto*, 913 F.2d at 1165–66. Thus, the court concluded that subsection 1252(i) imposes a duty on the Attorney General and does not provide incarcerated aliens with a private right of action. *Id.*

3. Incarcerated aliens lack standing to sue under section 1252(i). *Hernandez–Avalos*, 50 F.3d at 844–848. Without reproducing the court's lengthy analysis, we will simply state that the Tenth Circuit reached this conclusion after ascertaining that even if there were no private right of action under the statute, certain plaintiffs might still be able to enforce the provision by seeking a writ of mandamus. It then concluded that whether a given plaintiff had the right to seek a writ of mandamus rested on whether he satisfied the "zone of interests" test applicable in cases brought under the Administrative Procedure Act, which test can be summarized as follows:

> The essential inquiry is whether Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law.

*Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1452 (10th Cir.1994); *see also Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). The Tenth Circuit found that incarcerated aliens do not satisfy the zone of interest test for two reasons: (1) section 1252(i) was enacted not for the benefit of incarcerated aliens, but for the benefit of taxpayers, by providing for the initiation of deportation procedures during the term of incarceration

so that deportation may take place immediately upon release, thus saving the expense of housing and feeding aliens while they awaited deportation; and (2) it is doubtful that Congress intended the statute to be enforced by incarcerated aliens, because (a) since the statute is intended to benefit the prison systems, the officials who run them would be the natural plaintiffs in a suit to enforce section 1252(i); and (b) since the statute confers considerable discretion upon the Attorney General in prioritizing deportation cases, it would be extremely unlikely that Congress would want that discretion to be upset by individual suits brought by aliens. *Hernandez–Avalos*, 50 F.3d at 847–48.

The above analysis applies with even greater force to section 1252(h)(2)(a). Unlike section 1252(i), the new provision does not direct the Attorney General to do anything at all, but merely gives her the discretion to deport an incarcerated alien if in her judgment such deportation is appropriate and in the best interest of the United States. This clearly is not meant to benefit the incarcerated alien, nor can it in any way be read to infer an intent by Congress that incarcerated aliens be relied upon to enforce the statute—indeed, since the statute merely gives the Attorney General the discretion to deport incarcerated aliens, there is nothing to enforce.

We need not, however, rely merely upon an analogy with section 1252(i) to conclude that the amendment to section 1252(h) does not confer a right of action upon an incarcerated alien to seek immediate deportation. Sections 1252(h) and 1252(i) must be read as a unit. Section 1252(h) prohibits the deportation of an incarcerated alien until the term of incarceration is completed except under certain circumstances and at the discretion of the Attorney General (or the appropriate state official in the case of an alien in state custody). Section 1252(i), on the other hand, directs the Attorney General to begin any deportation proceeding as expeditiously as possible after the date of conviction, including, of course, deportation proceedings for any convicted alien sentenced to a term of imprisonment for whom the actual time of

deportation is governed by section 1252(h). Thus, section 1252(i) governs the initiation of deportation proceedings, while section 1252(h) governs the time when such deportation can take place. Therefore, any cause of action that might exist under section 1252(h) would properly be brought under section 1252(i). The conclusion that subsection 1252(i) does not confer a right of action on incarcerated aliens remains unchanged as a result of any amendment to section 1252(h).

### Conclusion

For the reasons set forth above, defendant's motion for an immediate order of deportation pursuant to 8 U.S.C. 1252(h)(2)(A) is denied.