United States Court of Appeals,

Fifth Circuit.

No. 92–1246.

Ulric Paul GIDDINGS, Plaintiff–Appellant,

v.

Ronald C. CHANDLER, District Director INS, et al., Defendants–Appellees.

Dec. 28, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

In this *pro se* appeal by an alien incarcerated in a Federal Correctional Institution in Texas, Petitioner–Appellant Ulric Paul Giddings appeals the district court's dismissal of his petition for a writ of mandamus, in which he seeks to compel Respondent–Appellee the Immigration and Naturalization Service (INS) to begin deportation proceedings against him. Finding that Giddings fails to establish his standing to bring suit under either the Mandamus and Venue Act (the Mandamus Act)[1] or the Administrative Procedure Act (APA)[2], we affirm.

I

FACTS AND PROCEEDINGS

Giddings, a native of Guyana, entered the United States in 1977, at the age of 16, as a lawful permanent resident. After graduating from high school, he joined the United States Marine Corps, married a United States citizen, and began a family. In 1990, Giddings was convicted in the United States District Court for the Eastern District of North Carolina of conspiracy to distribute cocaine and "cocaine base," i.e., "crack cocaine." As a result, Giddings received a sentence of seventy-eight months and was dishonorably discharged from the Marines. He is currently serving out his sentence at the Federal Correctional Institution at Seagoville, Texas, with a tentative release date of December

[1]28 U.S.C. § 1361 (1988).

[2]5 U.S.C. §§ 500–706 (1988).

30, 1995.

In January of 1991, the INS filed a detainer on Giddings with the prison authorities.[3] Giddings, and approximately sixty other prison inmates, acting *pro se,*[4] filed mandamus actions in the United States District Court for the Northern District of Texas, each seeking to compel the INS to begin deportation proceedings. The inmates alleged, inter alia, that the INS maintains a policy of delaying the commencement of deportation proceedings until after a convicted alien had served his sentence. In light of the large number of claims and their similarities, the district court stayed all but one of the cases, *Juan Raul Luevano–Orozco v. Chandler,*[5] which the court selected at random and referred to the United States Magistrate Judge.

After considering the *Luevano–Orozco* case, the magistrate judge entered his findings and recommendations, concluding that Luevano–Orozco, as an incarcerated alien, did not fall within the "zone of interest" of § 1252(i) of the Immigration and Nationality Act (INA)[6] or the APA. In his findings, the magistrate judge questioned whether there was any "injury in fact" caused by Luevano–Orozco's incarceration, noting that the inmate was confined pursuant to a legal conviction. Finally, the magistrate judge noted that, to the extent the claim could be construed as a petition for a writ for habeas corpus, there was no jurisdiction, noting that "the mere pendency of an INS detainer does not satisfy the "in custody' requisite."

In conclusion, the magistrate judge recommended dismissal of the claim pursuant to Fed.R.Civ.P. 12(b)(6). The district court adopted the recommendation and dismissed the claim. The court then gave each other similarly situated inmate an opportunity to show that his or her position was different from that of Luevano–Orozco. Giddings responded by filing written objections to the

---

[3]Filing a detainer is an informal procedure in which the INS informs prison officials that a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution.

[4]In *Santana v. Chandler,* 961 F.2d 514 (5th Cir.1992), we held that the interests of justice did not require appointment of counsel to assist with inmates' mandamus or habeas claims.

[5]Civil No. 3–91–1943–H (N.D.Tex. Dec. 17, 1991).

[6]8 U.S.C. §§ 1101–1557 (1988).

magistrate judge's findings. The district judge overruled the objections and dismissed Giddings' case. Giddings timely appealed, claiming that the magistrate judge and the district judge ignored *Soler v. Scott,*[7] a Ninth Circuit decision holding that an incarcerated inmate may state a claim pursuant to the Mandamus Act and the APA.

While Giddings' appeal was pending, the United States Supreme Court granted certiorari for *Soler.* In then disposing of the case by summary action, the Court vacated the case as moot and remanded to the Ninth Circuit for dismissal.[8] The Court's order for dismissal was based on the well-established policy of preventing a judgment, "unreviewable because of mootness, from spawning any legal consequences."[9] As a result of the Court's actions, Giddings may no longer rely on *Soler* as support for his claims. The dismissal of *Soler* as moot, however, does not prevent Giddings from making the same arguments as those adopted by the Ninth Circuit. Although *Soler* has no legal effect, we discuss its merits because Giddings presents the same arguments that were contained in the former Ninth Circuit decision. We consider Giddings' claim as one of first impression in this Circuit.

II

ANALYSIS

A. STANDARD OF REVIEW

We review de novo a trial court's dismissal for failure to state a claim upon which relief may be granted.[10] A trial court's decision to grant a Rule 12(b)(6) motion may be upheld "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the

---

[7]942 F.2d 597 (9th Cir.1991), *vacated as moot,* —— U.S. ——, 113 S.Ct. 454, —— L.Ed.2d —— (U.S.1992).

[8]*Sively v. Soler,* —— U.S. ——, 113 S.Ct. 454, —— L.Ed.2d —— (1992). The case had become moot as Soler had been released from prison without obtaining a deportation hearing.

[9]*United States v. Munsingwear Inc.,* 340 U.S. 36, 41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

[10]*FDIC v. Ernst & Young,* 967 F.2d 166, 169 (5th Cir.1992); *Barrientos v. Reliance Standard Life Ins. Co.,* 911 F.2d 1115, 1116 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 795, 112 L.Ed.2d 857 (1991).

allegations."[11]  In making this determination, we accept the well-pleaded allegations in a complaint as true.[12]

## B. APPLICABLE LAW

In his quest to have his deportation proceedings commenced, Giddings seeks to enforce § 701(i) of the INA,[13] which provides:

> **Expeditious deportation of convicted aliens.**  In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction.

The legislative history behind § 701 demonstrates that the principal thrust of the provision was to alleviate the serious problems of prison overcrowding and government expenditures.[14]  Specifically, the congressional debates targeted and criticized the INS practice of waiting until a convicted alien had served his sentence before commencing deportation proceedings.[15]  The expressed purpose of § 701(i) was to ease the problems of overcrowding and expense by "provid[ing] ... that deportation proceedings will begin when there is a conviction."[16]

Giddings claims that he may enforce § 701(i) against the INS—i.e., compel the INS to schedule his deportation hearing—under the Mandamus Act and the APA.  He premises his claim on *Soler,*[17] in which the Ninth Circuit relied on the text and history of § 701(i) in holding that Soler, a convicted alien, could compel his deportation, pursuant to § 701(i), under the Mandamus Act and the APA.  Giddings urges us to adopt the reasoning and conclusions of the Ninth Circuit.  Although, as we have noted, *Soler* has been vacated, Giddings may still argue that we should adopt the Ninth

---

[11]*Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986).

[12]*O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985).

[13]INA § 701(i), 8 U.S.C. § 1252(i) (1988).

[14]*See, e.g.,* 132 Cong.Rec. S16908–09 (Oct. 17, 1986) (Statement of Sen. Dole).

[15]*See* 132 Cong.Rec. H9794 (Oct. 9, 1986) (Statement of Rep. MacKay).

[16]*Id.* at H9794.

[17]*Soler,* 942 F.2d at 597.

Circuit's reasoning.

The INS, on the other hand, asserts that we should follow the decisions of the Sixth, Seventh, Eighth, and Eleventh Circuits, all of which have denied a convicted alien the right to enforce § 701(i) against the INS.[18] Moreover, the INS maintains that the *Soler* decision was decided on an incorrect assumption—namely, that the INS still follows a policy of waiting until convicted aliens are released from prison before beginning deportation proceedings—and thus is not persuasive.

Giddings disputes the applicability of the decisions of the Sixth, Seventh, Eighth, and Eleventh Circuits, arguing that these decisions are inapposite because they discuss an alien's right to compel deportation under a writ of habeas corpus or under an implied right of action to § 1252(i). Relying on *Soler* for distinction, Giddings argues that he is proceeding under the Mandamus Act and the APA; thus, he claims, he does not need to establish either a constitutional right under habeas or an implied private right of action under § 1252(i).

Giddings' characterization of the opinions of the other circuits is not entirely accurate. In *Gonzalez v. United States INS,*[19] the Eighth Circuit rejected an incarcerated alien's claim for mandamus relief, finding that mandamus was not appropriate absent an implied right of action under § 1252(i). The court concluded that no private right of action existed because § 1252(i) "impose[d] a duty on the Attorney General, rather than vesting a right in criminal aliens."[20] Although the cases of the Sixth, Seventh, and Eleventh Circuits do not directly address the question of mandamus relief, they do adopt *Gonzalez* and its reasoning.[21]

Even if Giddings were correct concerning the distinction he makes between his claim and the

---

[18]*Aguirre v. Meese,* 930 F.2d 1292 (7th Cir.1991) (finding that section 701(i) creates no private right of action for convicted alien); *Prieto v. Gluch,* 913 F.2d 1159 (6th Cir.1990) (same); *Orozco v. United States INS,* 911 F.2d 539 (11th Cir.1990) (holding that incarcerated aliens could not compel immediate disposition of their cases through writ of habeas corpus); *Gonzalez v. United States INS,* 867 F.2d 1108 (8th Cir.1989) (finding that section 701(i) creates no private right of action under Mandamus and Venue Act).

[19]867 F.2d at 1108.

[20]*Id.* at 1109.

[21]In the now vacated *Soler,* the Ninth Circuit reached a contrary result, holding that an implied right of action is not necessary under the Mandamus Act.

one in *Gonzalez,* we would still disagree with his conclusion that these opinions are inapplicable to our decision today. Giddings seeks relief under two statutes, each of which grants him a right of action *to enforce a duty owed to him under another statute.* In this case, the underlying statute allegedly creating a duty owed to Giddings is § 1252(i). It is inevitable that in our inquiry we must, as a threshold matter, examine the underlying statute (§ 1252(i)) and determine whether there is indeed a duty owed to Giddings. In this context, the decisions of the other circuits are relevant, because each considers whether § 1252(i) creates a duty to an incarcerated alien. In other words, the decisions of the other circuits are relevant in the determination of Giddings' standing to bring suit, discussed in more detail below.

Although Giddings may not need to prove a private right of action under § 1252(i),[22] he must establish his standing under the Mandamus Act and the APA. And, to have standing under either statute, Giddings must show, inter alia, that he falls within the "zone of interest" protected by the underlying statute—here, § 1252(i). In this context, the opinions concerning an implied right of action under § 1252(i) are applicable because the courts in those cases have considered: (1) whether the plaintiff is an intended beneficiary of the statute; and (2) whether the creation of a right of action would conflict with the purpose of the statute. As these are questions considered in determining whether a plaintiff is within the "zone of interest," we deem the implied right of action cases to be relevant.

C. STANDING

As we recently acknowledged, the doctrine of "[s]tanding defies precise definition."[23] "Generalizations about standing to sue are largely worthless as such. One generalization is, however, necessary and that is that the question of standing in the federal courts is to be considered in the

---

[22]Because we find the reasoning in *Gonzalez* applicable on other grounds, we need not address whether a private right of action is required for mandamus relief.

[23]*Society of Separationists, Inc. v. Herman,* 959 F.2d 1283, 1285 (5th Cir.1992) (en banc) (citing *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

framework of Article III which restricts judicial power to "cases' and "controversies.' "[24] As interpreted by the Supreme Court, Article III requires the plaintiff to make a three-fold showing: (1) "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"[25]; (2) that the injury "fairly can be traceable to the challenged action"[26]; and (3) that the injury "is likely to be redressed by a favorable decision."[27] In addition to the constitutional requirements, the plaintiff must meet the statutory requirements of standing by coming within its zone of protected persons.[28]

*1. Mandamus and Venue Act*

The Mandamus Act vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[29] Mandamus is an appropriate remedy "only when the plaintiff's "claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt.' "[30] Thus, mandamus is not available to review the discretionary acts of officials.[31]

For Giddings to have standing under the Mandamus Act, he must not only satisfy the

---

[24]*Association of Data Processing Serv. Orgs. Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

[25]*Gladstone Realtors v. Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

[26]*Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

[27]*Id.* at 38, 96 S.Ct. at 1924.

[28]*Data Processing,* 397 U.S. at 150, 90 S.Ct. at 829.

[29]28 U.S.C. § 1361.

[30]*Nova Stylings, Inc. v. Ladd,* 695 F.2d 1179 (9th Cir.1983) (quoting *Jarrett v. Resor,* 426 F.2d 213, 216 (9th Cir.1970), and *Tagupa v. East–West Ctr., Inc.,* 642 F.2d 1127, 1129 (9th Cir.1981)); *see also United States v. United States Dist. Court, S. Dist. of Texas,* 506 F.2d 383, 384 (5th Cir.1974) (Plaintiff must show a " "clear and indisputable' right to the extraordinary writ.").

[31]*Green v. Heckler,* 742 F.2d 237, 241 (5th Cir.1984).

constitutional requirements of injury, causation, and redressability,[32] but must also establish that a duty is owed to him. Any duty owed to the plaintiff must arise from another statute—in this case § 1252(i)—or from the United States Constitution. When the right alleged stems from a statute, a duty is owed to the plaintiff for the purpose of the Mandamus Act if—but only if—the plaintiff falls within the "zone of interest" of the underlying statute.[33]

The "zone of interest" test, first articulated by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,*[34] requires that "the interests sought to be protected by the complainant ... arguably [be] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."[35]   Although this test "has not proved self-explanatory,"[36] the Supreme Court has clarified it further by explaining:

> The "zone of interest" test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. In cases where the plaintiff is not itself the subject of the contested regulatory action, *the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.* The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.[37]

Guided by this language, we consider whether § 1252(i) creates sufficient interests for

---

[32]In *Soler,* the Ninth Circuit's conclusion that mandamus was an appropriate remedy was premised first on its conclusion that the incarcerated alien had standing. The court reasoned that the alien, Soler, met the constitutional requirements by alleging injury in fact in the form of illegal incarceration, that the injury was caused by the INS' failure to begin deportation proceedings, and the injury would be redressed by the holding of such proceedings. The INS, in harmony with the magistrate's findings, takes issue with the conclusion that an alien, incarcerated pursuant to a legal conviction, suffers injury in fact. For the purpose of this appeal, we assume that Giddings has met the constitutional requirements.

[33]*See Jarecki v. United States,* 590 F.2d 670, 675 (7th Cir.1979); *CBS Inc. v. Young,* 522 F.2d 234, 237–38 (6th Cir.1975); *New York v. Heckler,* 578 F.Supp. 1109 (E.D.N.Y.1984), *aff'd,* 742 F.2d 729 (2d Cir.1984).

[34]397 U.S. at 150, 90 S.Ct. at 829.

[35]*Id.* at 153, 90 S.Ct. at 830.

[36]*Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 396, 107 S.Ct. 750, 755, 93 L.Ed.2d 757 (1987) (citations omitted).

[37]*Id.* at 399–400, 107 S.Ct. at 757 (citations omitted) (emphasis added).

Giddings that his suit is not marginally related or inconsistent with the purpose of the statute. We conclude that the Eighth Circuit's reasoning in *Gonzalez,* which found that such a suit would be inconsistent with the statute's main purposes of reducing prison overcrowding and cost to the government, is persuasive. We therefore join the Sixth, Seventh, and Eleventh Circuits in following the Eighth Circuit's reasoning in *Gonzalez.*

In *Soler,* the Ninth Circuit acknowledges that § 701 was enacted for the taxpayers' benefit and not for the benefit of the incarcerated alien. The court reasoned, however, that Soler's suit "advance[d] the stated congressional purpose of reducing prison crowding caused by INS delay. Soler's suit thus has a "plausible relationship to the policies' underlying Section 701."[38] In our view, the Sixth Circuit, in *Prieto v. Gluch,* assessed the dilemma more accurately, stating:

> Allowing criminal aliens to bring suit to compel the
>
> Attorney General to begin their deportation proceeding as expeditiously as possible, although perhaps not inconsistent with the purposes of controlling the flow of drugs into the United States and ameliorating the problem of prison overcrowding, does not seem to be consistent with these purposes either. These purposes are not concerned with the rights of criminal aliens but rather with removing such aliens from the country. It would seem anomalous to permit aliens to enforce section 1252(i) when that section is not concerned with aiding such aliens.[39]

We do not agree that allowing a criminal alien to compel his own deportation proceedings furthers the twin purposes of reducing prison overcrowding and saving taxpayer money. To the contrary, there is evidence that the result would be to interfere with the Attorney General's administration of the statute, thereby frustrating the statute's purposes, at least in part. In any event, we do not agree that a person has standing simply because his or her suit may further the purposes of the statute. If that were so, then one would have standing to sue any time that a lawsuit might be deemed to further the purposes of any statute. Such an overbroad view of standing is inconsistent with the decisions of the Supreme Court.[40]

---

[38]*Soler* 942 F.2d at 605 (quoting *Clarke,* 479 U.S. at 403, 107 S.Ct. at 759).

[39]*Prieto,* 913 F.2d at 1166.

[40]*See, e.g., Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Moreover, in our view it is inconsistent to grant a criminal alien a right to compel his deportation when the statute upon which he relies grants him no such right. Instead, while § 1252(i) imposes a duty on the Attorney General to begin proceedings once an alien is deemed deportable because of a conviction, that statute also grants the Attorney General discretion to proceed "as expeditiously as possible." As the Eighth Circuit explained in *Gonzalez,* there is a distinction between imposing a duty on a government official and vesting a right in a particular individual.[41] We read § 1252(i) as imposing a duty on the Attorney General to deport criminal aliens, but we stop short of concluding that this creates a duty *owed to the alien.*

Thus, we hold that Giddings, as a criminal alien, does not possess a right under § 1252(i) sufficient to bring him within the statute's zone of interest. Moreover, we conclude that allowing a criminal alien to bring suit to compel his deportation does not further the purposes of the statute, but if anything hinders the Attorney General's ability to carry out his statutory duty "as expeditiously as possible." Because Giddings does not fall within the "zone of interest" protected by § 1252(i), he has no standing to invoke the Mandamus Act.

Relying on *Soler,* however, Giddings alleges that the Attorney General has exceeded his discretion under § 1252(i) by adopting a policy of delaying the commencement of deportation proceedings until an incarcerated alien has served his sentence. In *Soler,* the court accepted this allegation as true without a specific finding of fact, and the outcome of the decision relies in part on the presumed existence of the policy. The *Soler* court reasoned that the existence of such a policy exceeded the Attorney General's discretion, making his duty to act clear and therefore rendering mandamus an appropriate remedy.

Because the instant case comes to us on appeal of a Rule 12(b)(6) dismissal, we are bound to accept Giddings' allegations concerning the existence of the policy as true. Even assuming such a policy existed, however, the outcome of this case does not change. The court in *Soler* reached its decision that mandamus was an appropriate remedy after first determining that the criminal alien had standing. In the instant case, however, even if the Attorney General is in violation of his duty,

---

[41]*Gonzalez,* 867 F.2d at 1109.

Giddings lacks standing because we hold today that such a duty is not owed to him. Therefore, Giddings allegation regarding the INS policy on delayed deportation of prisoners, even if true, is unpersuasive.

*2. APA Claim*

In addition to his request for mandamus relief, Giddings seeks to compel his deportation under § 702 of the APA, which grants a "person suffering legal wrong because of agency action within the meaning of a relevant statute"[42] standing to "compel agency action unlawfully withheld or unreasonably delayed."[43] But, standing under the APA is determined by applying the same "zone of interest" test as applied to determine standing in the mandamus context; thus, Giddings' APA claim must also fail for lack of standing because he does not come within the "zone of interest" of § 1252(i).[44]

III

CONCLUSION

Faced with a question of first impression, whether a criminal alien has the right to compel the INS to commence deportation proceedings against him under § 1252(i), we join those circuits which hold that one so situated has no right to compel the INS to take such action. Although we concur in the results reached by these circuits, our reasoning is somewhat different: our conclusion rests on our holding today that a criminal alien lacks standing to bring suit under either the Mandamus Act or the APA because criminal aliens do not fall within the "zone of interest" of § 1252(i) and thus have no standing to compel the INS to commence deportation proceedings. The district court's dismissal pursuant to Rule 12(b)(6) is thus

AFFIRMED.

---

[42]5 U.S.C. § 702.

[43]*Id.* § 706.

[44]The INS argues that its adjudicatory proceedings under § 1252 are not governed by the APA. We do not reach this issue as it is clear from our discussion of the "zone of interest" test that Giddings lacks standing.