**REVISED**

United States Court of Appeals,

Fifth Circuit.

DUNN-McCAMPBELL ROYALTY INTEREST, INC., a Texas Corporation;
Dunn-Padre Corporation, a Texas Corporation; McCampbell Minerals,
Inc., Plaintiffs-Appellants,

v.

NATIONAL PARK SERVICE, an Agency of the United States Department
of Interior; Butch Farabee, in his official capacity as
Superintendent for the Padre Island National Seashore, Defendants-
Appellees.

No. 95-40770.

May 23, 1997.

Appeal from the United States District Court for the Southern
District of Texas.

Before JONES, DUHÉ and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs Dunn-McCampbell Royalty Interest, Dunn-Padre

Corporation, and McCampbell Minerals (collectively "Dunn-

McCampbell") appeal the district court's grant of summary judgment

in the companies' action challenging the regulatory authority of

the National Park Service.

I

P.F. Dunn once owned both the land and mineral rights to a

long stretch of barrier islands in Texas, now known collectively as

Padre Island. In 1926, Dunn severed the two estates, conveying the

surface estate to third parties and reserving the subsurface

mineral rights for himself. Dunn conveyed the mineral estate to

plaintiffs Dunn-McCampbell, and the companies leased the mineral

1

estate for exploration and development, primarily to the Sun Oil Company.

Pursuant to the Padre Island National Seashore Enabling Legislation, 16 U.S.C. § 459d *et seq.,* the National Park Service acquired a seventy-mile stretch of the barrier island surface estate and established the Padre Island National Seashore ("PINS"), the longest stretch of undeveloped ocean beach in the United States. In 1978, the National Park Service issued its Non-Federal Oil and Gas Rights regulations, 36 C.F.R. § 9B ("9B regulations"), which "control all activities within any unit of the National Park System in the exercise of rights to oil and gas not owned by the United States where access is on, across or through federally owned or controlled lands or waters." 36 C.F.R. § 9.30 (1995). These regulations apply to all mineral rights that must be accessed through national parks, including Dunn-McCampbell's mineral estate under Padre Island.

Among other things, the 9B regulations require that mineral developers submit a plan of operations to the National Park Service for approval before extracting subsurface minerals. Since the regulations took effect in 1979, Dunn-McCampbell's lessees have submitted fifty-two plans of operations to the Park Service, and the Park Service has approved each plan. The Park Service has never denied a plan of operations there.

Between 1986 and 1989, Dunn-McCampbell secured releases of most of Sun Oil's interests on Padre Island. Dunn-McCampbell has never sought to exercise its regained mineral rights and has never

2

submitted a plan of operations to the Park Service. Dunn-McCampbell has declared by affidavit, however, that the severity of the 9B regulations has deterred oil companies from leasing these mineral rights. They contend that such chilling is remediable in this court.

Dunn-McCampbell brought this action on March 8, 1994, asserting both facial and "as applied" challenges to the 9B regulations. The companies claimed federal question jurisdiction under 28 U.S.C. § 1331, as well as jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA") 5 U.S.C. § 704. Specifically, Dunn-McCampbell contended that (1) Texas law, under which the mineral estate is dominant to the surface estate, precludes the Park Service from regulating or blocking mineral development, (2) the National Park Service has exceeded its constitutional and statutory authority in passing the 9B regulations, and (3) the 9B regulations amounted to an uncompensated taking under the Fifth Amendment.

The district court granted the Park Service's motion for summary judgment, holding that, although Dunn-McCampbell had standing to sue, the companies failed to pursue their facial and applied challenges within the six-year statute of limitations applied to civil claims under 28 U.S.C. § 2401(a). The district court also addressed and dismissed Dunn-McCampbell's substantive claims as being without merit. Finally, the court severed Dunn-McCampbell's takings claim and transferred it to the Court of Federal Claims. Dunn-McCampbell filed this timely appeal.

3

The district court held that Dunn-McCampbell's challenges were time barred and that the companies' substantive claims were without merit. We review the district court's grant of a summary judgment motion *de novo.* *Nose v. Attorney General of the United States,* 993 F.2d 75, 78 (5th Cir.), *reh'g denied,* 998 F.2d 1015 (1993). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When ruling on summary judgment motions, we credit the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, we must affirm summary judgment if there is no need for trial. *O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015, 1017 (5th Cir.1990).

As a preliminary matter, we note that neither the National Park Service organic statute, 16 U.S.C. § 1 *et seq.,* nor the Padre Island National Seashore Enabling Legislation, 16 U.S.C. § 459d, provides directly for judicial review, and neither creates a private right of action. Federal courts are courts of limited jurisdiction, and they may not hear claims without jurisdiction conferred by statute. *Veldhoen v. United States Coast Guard, T.A.,* 35 F.3d 222, 225 (5th Cir.1994). However, even absent a statutory cause of action, Dunn-McCampbell may challenge the agency's authority under the APA. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no

other adequate remedy in a court are subject to judicial review."). Dunn-McCampbell may therefore challenge the National Park Service's 9B regulations under the APA, and this court will have federal question jurisdiction under 28 U.S.C. § 1331. *Veldhoen,* 35 F.3d at 225.

Accordingly, Dunn-McCampbell's APA challenge is governed by the general statute of limitations provision of 28 U.S.C. § 2401(a), which provides that every civil action against the United States is barred unless brought within six years of accrual.[1] Under established principles of sovereign immunity, the United States is immune from suit unless it consents, and the terms of its consent circumscribe our jurisdiction. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). The applicable statute of limitations is one such term of consent, and failure to sue the United States within the limitations period is not merely a waivable defense. It operates to deprive federal courts of jurisdiction. *Sisseton-Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990).

A

Dunn-McCampbell asserts both facial and applied challenges to the Park Service regulations. The companies assert that the

---

[1]Although an administrative proceeding is not a civil action, a complaint filed in federal court seeking review of an administrative decision is. *Wind River Mining Corp. v. United States,* 946 F.2d 710, 712 (9th Cir.1991); *N.V. Philips' Gloeilampenfabrieken v. Atomic Energy Comm'n,* 316 F.2d 401, 405-06 (D.C.Cir.1963).

5

regulations exceeded National Park Service authority under the Padre Island National Seashore Act, 16 U.S.C. § 459d *et seq.* We need not reach the merits of that claim here. On a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Nutt v. Drug Enforcement Administration,* 916 F.2d 202, 203 (5th Cir.1990); *Friends of Sierra Railroad, Inc. v. Interstate Commerce Comm'n,* 881 F.2d 663, 667-68 (9th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990); *see also* 44 U.S.C. § 1507 (filing a document in the Federal Register is sufficient to give notice of the contents to any person subject to or affected by it). Dunn-McCampbell failed to mount a facial challenge to the regulations within six years of their publication in 1979, and the companies' cause of action falls outside the limitations period for civil actions against the United States in § 2401(a).

It is possible, however, to challenge a regulation after the limitations period has expired, provided that the ground for the challenge is that the issuing agency exceeded its constitutional or statutory authority. To sustain such a challenge, however, the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit. The Ninth Circuit, for example, has held that a challenger may contest an agency decision as exceeding constitutional or statutory authority after the limitations period, but only by petitioning the agency to

6

review the application of the regulation to that particular challenger. *Wind River Mining Corp. v. United States,* 946 F.2d 710, 715 (9th Cir.1991). Although the *Wind River* Court never said so explicitly, the court treated the agency's denial of that petition as a "final agency action" sufficient to create a new cause of action under the APA.

Similarly, in *Public Citizen v. Nuclear Regulatory Commission,* the D.C. Circuit held that it had jurisdiction to hear a substantive challenge after the limitations period had run. 901 F.2d 147, 152 (D.C.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990). In that case, the claimant filed a petition with the agency to rescind regulations, then challenged the agency's denial of the petition in federal court. *Id.* Indeed, we have held that when an agency *applies* a rule, the limitations period running from the rule's publication will not bar a claimant from challenging the agency's statutory authority. *Texas v. United States,* 749 F.2d 1144, 1146 (5th Cir.), *reh'g denied, cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985).

These cases do not create an exception from the general rule that the limitations period begins to run from the date of publication in the Federal Register. They merely stand for the proposition that an agency's application of a rule to a party creates a new, six-year cause of action to challenge to the agency's constitutional or statutory authority.

If Dunn-McCampbell were able to point to such an application of the regulations here, or if they had petitioned the National

7

Park Service to change the 9B regulations and been denied, this court might have jurisdiction to hear that case. Dunn-McCampbell has failed to make such a showing. Accordingly, we hold that the applicable statute of limitations bars Dunn-McCampbell's facial challenge to the 9B regulations.

B

An "as applied" challenge must rest on final agency action under the APA. 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no remedy in a court are subject to judicial review."). But absent some "final" action, the APA will not provide a cause of action to challenge agency decisions. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990); *Veldhoen,* 35 F.3d at 225. The Supreme Court has identified four factors for determining when agency action is final: (1) whether the challenged action is a definitive statement of the agency's position, (2) whether the action has the status of law with penalties for noncompliance, (3) whether the impact on the plaintiff is direct and immediate, and (4) whether the agency expects immediate compliance. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149-53, 87 S.Ct. 1507, 1516-17, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

Under this standard, Dunn-McCampbell arguably might challenge a Park Service denial of a proposed plan of operations. Dunn-McCampbell might even be able to challenge action that the Park

8

Service took to block the companies' access to their mineral estate. We need not reach those questions here, however, since it is undisputed that neither of these events has occurred. The National Park Service has taken no action against Dunn-McCampbell that demands immediate compliance. It is a tautology that Dunn-McCampbell may not challenge the 9B regulations as applied until the Park Service applies the regulations to Dunn-McCampbell.[2]

                                    III

In addition to federal question jurisdiction, Dunn-McCampbell has asserted jurisdiction under the Mandamus Act. This statute requires exceptional showings that Dunn-McCampbell has not met. The statute provides that: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

Mandamus is an extraordinary remedy, available only where government officials clearly have failed to perform nondiscretionary duties. *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121, 109 S.Ct. 414, 424, 102 L.Ed.2d 408 (1988); *Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir.1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). In order for mandamus to issue, Dunn-McCampbell must demonstrate that a government officer

---

[2]Relatedly, we need not decide whether Dunn-McCampbell would have standing to contest the Park Service's regulation of the companies' lessee Sun Oil, because the last such regulation occurred more than six years before this action was filed.

owes the companies a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion. *Richardson v. United States,* 465 F.2d 844, 849 (3d Cir.1972), *rev'd on other grounds,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). The legal duty must be set out in the Constitution or by statute, *Giddings v. Chandler,* 979 F.2d 1104, 1108 (5th Cir.1992), and its performance must be positively commanded and so plainly prescribed as to be free from doubt. *Id.*

Dunn-McCampbell has established none of the above. The companies have not identified which duty they are owed. They have not pointed to a statutory or constitutional basis for any duty. We therefore cannot, and need not, decide whether such a duty would be mandatory or discretionary. Dunn-McCampbell's general claims of agency overreaching are simply insufficient to create a legal duty under the Mandamus Act.

### IV

In sum, Dunn-McCampbell is time barred from asserting a facial challenge, and the Park Service has not yet applied the regulations to the companies, so the companies may not challenge the 9B regulations under the APA. They have not identified a statutory or constitutional duty meriting relief under the Mandamus Act.

For these reasons, we hold that the district court was not in error in granting the Park Service's motion for summary judgment. Accordingly, we AFFIRM.

EDITH H. JONES, Circuit Judge, dissenting:

With due respect to my colleagues, I am not convinced that the

10

statute of limitations has run against Dunn-McCampbell in this case. I would reverse and remand for further proceedings that would elicit when Dunn-McCampbell first began to be injured by the cost of compliance with the regulations.

It is important to clarify, as the majority has not done, that under Texas law, Dunn-McCampbell was prevented in two ways from being able to challenge the Park Service regulations while it remained simply a lessor/overriding royalty owner, whose mineral interest was being developed by other operators. Its interest was a non-possessory interest with a possibility of reverter when the leases terminated. First, the holder of an overriding royalty in Texas bears no portion of the production costs; its interest is based on gross production from the wells. Hence, Dunn-McCampbell could not have been charged for any increased operating costs caused by the Park Service regulations and suffered no injury that could confer standing to sue the government. Additionally, the lease operator in Texas is responsible for prudently developing and maintaining the mineral lease, a responsibility which includes the obligation to pursue administrative remedies to benefit the lease. *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 570 (1981); R. Hemingway, *Texas Law of Oil & Gas,* § 819(D) (3d ed.1991). It fell to the lessee, Sun, rather than Dunn-McCampbell as lessor to maintain a lawsuit against the Park Service while Sun was operator, but as noted, such a lawsuit could produce immediate monetary damages only for Sun.

Because of the parties' state law and contractual positions,

11

which surely should not be ignored for standing purposes, Dunn-McCampbell could not have sued the Park Service before it began to reacquire its leases in 1986-89. Limitations on certain challenges to the regulations could not begin to run against Dunn-McCampbell until that time.

The only legal question, then, is what kind of claims Dunn-McCampbell could advance after 1986-89 against the Park Service, when it acquired standing to sue. I agree with the majority that by the time Dunn-McCampbell achieved standing, it could not challenge the "procedural" basis for the Park Service's 1979 regulations. According to terminology developed in the D.C. Circuit, "procedural" challenges address the agency's compliance with rulemaking requirements such as notice and comment, while "substantive" challenges attack the regulation's compliance with statutory authority or other substantive deficiency. *See generally N.L.R.B. Union v. FLRA,* 834 F.2d 191, 195-97 (D.C.Cir.1987). Because it is imperative to the administrative process that procedural challenges be posed at the onset of a newly-promulgated regulation, a number of agency statutes set very short deadlines, e.g. 60 days, on initiating such claims. *See,* e.g., *id.* The Park Service lacks such organic statutory protection, however, so the six-year general federal limitations statute governs procedural challenges in this case, and no party, including Dunn-McCampbell, could pursue these challenges after 1985.

It is equally well settled, however, that if an agency

12

regulation is not authorized by its governing statute,[3] a party injured by application of the regulation may raise the issue outside the statutory limitations period; a regulation initially unauthorized by statute cannot become authorized by the mere passage of time. The point that divides the majority and me is their insistence that the agency's lack of statutory authority could be raised by Dunn-McCampbell only in defense against an agency enforcement action or if the company petitions to rescind or amend the Park Service regulations and receives an adverse decision. I differ with the majority over what kind of "injury" from agency "action" is necessary to precipitate the claim. In my view, it is a waste of time to require as a prerequisite to suit that Dunn-McCampbell manufacture "agency action" by petitioning the Park Service to revoke its regulations and suffering—at some time in the possibly remote future—the inevitable rebuff. Dunn-McCampbell claims that the existence of Park Service regulations renders it uneconomic for new operators even to bid on reinstituting production from its Padre Island mineral rights.[4]

---

[3]While nearly all the courts that have decided these questions analytically distinguished between "procedural" and "substantive" challenges, as I have done, the majority identifies only "facial" and "as applied" challenges to the regulations. The majority's terminology is unnecessarily confusing. A "facial" challenge could attack the procedure, the substantive basis, or the regulation's subservience to its governing statute, and under prevailing law, only the first type of challenge is absolutely barred within fixed periods after the statute has been promulgated. Despite the majority's failure to conform to the more common analytical distinction, I do not understand their opinion to disagree with those cases.

[4]For this reason, it is not material that Dunn-McCampbell has not approached the Park Service with plans to develop the leases.

13

The company seeks declaratory judgment relief from the regulation's onerous effect. This claim may or may not be well-founded, but it definitely alleges injury occasioned by agency action, consisting of the overlay of numerous Park Service regulations and the constantly changing and thus unpredictable nature of the regulations. Consequently, if Dunn-McCampbell filed suit within six years after it effectively reacquired its leases, its action is timely.

We must recall the essence of Dunn-McCampbell's legal claim—that when Padre Island Park was transferred to the federal government, Texas reserved the right to regulate oil and gas production from Dunn-McCampbell's mineral interests, which were never transferred to federal jurisdiction. If this claim is correct, the Park Service has not had jurisdiction to regulate at all. Dunn-McCampbell poses a straightforward, albeit complex, legal issue readily amenable to judicial review. Under the particular facts of this case, it is perverse for the majority to require Dunn-McCampbell to spend a lot of time and money petitioning the agency to reconsider its authority simply to lay the predicate for a future lawsuit.[5] If Dunn-McCampbell has sued

According to its allegations, to do so would require an operator to invest considerable resources in making a good-faith estimate of the costs of its operations and the hindrances caused by Park Service regulations—and all this would be done simply to precipitate a lawsuit. Under these circumstances, Dunn-McCampbell's claim is ripe for adjudication.

[5] *See Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 152 (D.C.Cir.1990) ("were we to hold in this case that Public Citizen's challenge to the lawfulness of the NRC's action was untimely, Public Citizen could file a petition for rulemaking and

within six years of the dates it began effectively reacquiring leases, I would allow this suit to go forward.

---

then raise its claim of unlawfulness when the Commission denied the petition.  Such a requirement would be a waste of everyone's time and resources.")