# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 29, 2020

Lyle W. Cayce
Clerk

No. 19-50321

AMERICAN STEWARDS OF LIBERTY; CHARLES SHELL; CHERYL SHELL; WALTER SIDNEY SHELL MANAGEMENT TRUST; KATHRYN HEIDEMANN; ROBERT V. HARRISON,

Plaintiffs

JOHN YEARWOOD; WILLIAMSON COUNTY, TEXAS,

Intervenor Plaintiffs - Appellants - Cross Appellees

v.

DEPARTMENT OF INTERIOR; UNITED STATES FISH AND WILDLIFE SERVICE; DAVID BERNHARDT, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR, in his official capacity; MARGARET E. EVERSON, in her official capacity as Director of the U.S. Fish and Wildlife Service; AMY LUEDERS, in her official capacity as the Southwest Regional Director of the U.S. Fish and Wildlife Service,

Defendants - Appellees - Cross Appellants

CENTER FOR BIOLOGICAL DIVERSITY; TRAVIS AUDUBON; DEFENDERS OF WILDLIFE,

Intervenor Defendants - Appellees

Appeals from the United States District Court
for the Western District of Texas

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

No. 19-50321

PER CURIAM:

The Bone Cave harvestman is a small arachnid known to live only in central Texas that is currently included on the federal endangered species list. In 2014, a non-profit group and several individuals, including John Yearwood, filed a petition with the U.S. Fish and Wildlife Service ("FWS") calling for the Bone Cave harvestman to be delisted because it does not currently meet the standards for an endangered species. After reviewing the petition, FWS issued a negative "90-day finding," which is a summary denial based on the agency's conclusion that the petition did not present sufficient scientific or commercial evidence indicating that delisting was warranted.

Some of the petitioners (collectively, "the Original Plaintiffs")—but not Yearwood— filed an action in federal district court under the Administrative Procedures Act ("APA"), challenging FWS's negative 90-day finding as arbitrary and capricious. While the case was pending, the district court allowed Yearwood and Williamson County (collectively, "the Intervening Plaintiffs") to intervene to separately argue that federal regulation of the purely intrastate species is unconstitutional because it exceeds Congress's power under the Commerce and Necessary and Proper Clauses.

The district court ultimately rejected the Intervening-Plaintiffs' constitutional arguments but granted summary judgment to the Original Plaintiffs, concluding that FWS had erred by demanding a higher quantum of evidence than was statutorily required for a 90-day finding. The court vacated and remanded FWS's negative 90-day finding, and FWS has since issued a positive 90-day finding and begun a more substantial 12-month review to determine whether the Bone Cave harvestman should be delisted. The Intervening Plaintiffs now appeal the denial of their motion for summary judgment, arguing that this court retains jurisdiction to hear their separate constitutional arguments for delisting the Bone Cave harvestman. Because we

No. 19-50321

find that their appeal is alternatively moot or barred by sovereign immunity, we dismiss the appeal for lack of jurisdiction.

## I.

## A.

*Texella reyesi*, or the Bone Cave harvestman, is a tiny, pale orange, eyeless arachnid[1] known to live only in caves within a 150-square-mile stretch of Travis and Williamson Counties in Texas.  FWS first added the arachnid to the endangered species list in 1988 as the Bee Creek Cave harvestman, s*ee* 53 Fed. Reg. 36,029 (Sept. 16, 1988), then listed the Bone Cave harvestman separately in 1993 after further studies revealed that the population was composed of two distinct species, 58 Fed. Reg. 43,818 (Aug. 18, 1993).  The inclusion of the Bone Cave harvestman on the endangered species list makes it a federal crime to "take" the species or disturb its habitat.  *See* 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.21(c).  A "take" is defined as "harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, or collecting" members of the species "or attempting to engage in any such conduct."  16 U.S.C. § 1532(19).

In June 2014, the non-profit advocacy group American Stewards of Liberty, Yearwood, and several other individuals that owned land inhabited by Bone Cave harvestmen collectively filed with FWS a "Petition to delist the Bone Cave harvestman (*Texella reyesi*) in accordance with Section 4 of the Endangered Species Act of 1973."  The petition argued that the Bone Cave harvestman should no longer be considered endangered because scientists had discovered 166 new localities containing the species since the time of the original listing; many of the localities were protected by other federal, state,

---

[1] Although harvestmen bear a superficial resemblance to spiders, they are actually a distinct order of arachnids known as Opiliones.

No. 19-50321

and local regulations; and development and other human activity in the vicinity of the localities had been shown to be less harmful to Bone Cave harvestman populations than was previously thought.

A year later, FWS issued a 90-day finding on the petition, which is a preliminary ruling required under 16 U.S.C. § 1533(b)(3)(A) regarding whether further consideration of a petition is warranted. 80 Fed. Reg. 30,990 (June 1, 2015). FWS determined that, although population data on the species was likely impossible to obtain due to much of the population's residing in caves that are inaccessible to humans, the petition was deficient because it did not include population "trend analysis to indicate that this species can withstand the threats associated with development or climate change over the long term." *Id.* Accordingly, FWS concluded that no further review was necessary and denied the petition. *Id.*

**B.**

In December 2015, the Original Plaintiffs filed an action challenging FWS's negative 90-day finding in the U.S. District Court for the Western District of Texas under Section 702 of the APA, 5 U.S.C. § 702. The complaint argued that FWS had applied an inappropriately heightened standard at the 90-day review stage, demanding more than the regulatorily required "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1). Shortly thereafter, the Intervening Plaintiffs filed a motion to intervene, seeking a declaration that federal regulation of the Bone Cave harvestman is unconstitutional and a permanent injunction preventing FWS from enforcing the prohibition on Bone Cave harvestman takes in addition to vacatur of the 90-day finding. The district court granted the Intervening Plaintiffs permissive intervention under FEDERAL RULE OF CIVIL PROCEDURE

4

No. 19-50321

24(b)(1)(B), stating without elaboration that their claims shared common questions of fact with those of the Original Plaintiffs.

The parties filed cross motions for summary judgment, and, on March 28, 2019,[2] the district court entered an order granting summary judgment to the Original Plaintiffs and disposing of all parties' claims. *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711 (W.D. Tex. 2019). The court first determined that, by requiring population data that was admittedly unavailable, FWS had not made its decision based on the best available data as was statutorily required. *Id.* at 727-28. The court found that the delisting petition had presented sufficient data that a reasonable person would conclude that delisting may be warranted and it thus met the standard for a positive 90-day finding and a more substantial 12-month review. *Id.* The district court therefore vacated FWS's negative 90-day finding and remanded the case for further consideration. *Id.* at 728-29. FWS accepted the remand and has since issued a positive 90-day finding, *see* 84 Fed. Reg. 54,542 (Oct. 10, 2019), and this aspect of the district court's ruling is not at issue in this appeal.

Turning to the Intervening Plaintiffs' motion for summary judgment, the district court observed that the general six-year statute of limitations for civil actions against the United States applies to claims brought under the APA. *Am. Stewards of Liberty*, 370 F. Supp. 3d at 731 (citing 28 U.S.C. § 2401(a)). The court reasoned that, under this court's decision in *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1286 (5th Cir.

---

[2] Prior to the motions for summary judgment, FWS requested that the matter be returned to the agency for consideration of additional materials that it had inadvertently omitted during its initial decision, and the district court granted the motion. Several months later, FWS issued a new 90-day finding that mirrored the reasoning of the first, again concluding that the petition had failed to present substantial scientific and commercial data indicating delisting was warranted. 82 Fed. Reg. 20,861 (May 4, 2017). Subsequently, the Original Plaintiffs and the Intervening Plaintiffs amended their respective complaints to instead challenge the new 90-day finding.

1997), the law distinguishes between facial challenges to agency regulations and challenges to a subsequent agency action applying the regulation for purposes of determining when an APA claim accrues. *Am. Stewards of Liberty*, 370 F. Supp. 3d at 731. A naked facial claim alleging that the regulation exceeds the agency's statutory or constitutional authority accrues upon the agency's publishing the regulation, the court continued, and such a challenge thus must be brought within six years thereof. *Id.* By contrast, a challenge to a specific application of the regulation accrues at the time of the agency action applying the regulation to the plaintiff, the district court explained, including an agency's denial of a plaintiff's petition to rescind the regulation or its issuance of an order requiring the plaintiff to comply with the regulation. *Id.*

Applying this framework to the Intervening Plaintiffs' claims, the court determined that Yearwood's challenge to FWS's constitutional authority to regulate the Bone Cave harvestman was timely because he was a signatory to the delisting petition and therefore could demonstrate a recent final agency action applying the regulation to him personally. *Id.* at 731-32. Williamson County was not a party to the petition, however, and its claim was therefore time-barred because it was not brought within six years of the original listing of the species, the court concluded. *Id.* at 732.

As for the merits of Yearwood's challenge, the court found that the Fifth Circuit had already specifically determined in *GDF Realty Investments, Ltd. v. Norton*, 326 F.3d 622 (5th Cir. 2003), that, because regulation of the Bone Cave harvestman is an essential part of the economic scheme established by the Endangered Species Act, it does not exceed Congress's power under the Commerce Clause. *Am. Stewards of Liberty*, 370 F.Supp. 3d at 732-33. Accordingly, the court denied the Intervening-Plaintiffs' motion for summary judgment. *Id.* at 735.

No. 19-50321

The Intervening Plaintiffs timely appealed. While the appeal was pending before this court, the Government filed a motion to dismiss for lack of jurisdiction. The Government argued, *inter alia*, that the appeal was moot because the challenged agency action that formed the basis of the Intervening-Plaintiffs' claims had been vacated. A motions panel of this court ordered the motion carried with the case.

## II.

This Court is "obligated to determine *de novo*" whether it has jurisdiction over an appeal. *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004). Here, the Intervening Plaintiffs ultimately seek a judicial ruling as to the constitutionality of FWS's regulation of activities affecting the Bone Cave harvestman. However, it is well settled that "[t]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions"; "concrete legal issues, presented in actual cases, not abstractions are requisite." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)). Thus, the Intervening Plaintiffs must allege an actual or imminent injury that is traceable to a specific action by FWS that is redressable by relief the court is authorized to grant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In cases against the federal government and its instrumentalities, this inquiry is intertwined with questions of sovereign immunity. "[T]he United States is immune from suit unless it consents, and the terms of its consent circumscribe our jurisdiction." *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1287 (5th Cir. 1997). Thus, the Intervening Plaintiffs may only bring suit against FWS and the other federal defendants if they are able to trace their alleged injury to an action by the defendants that federal law allows to be challenged, and even then only if the

action is brought within the time period that federal law allows for such a suit. In other words, a "failure to sue the United States within the limitations period" for a specific cause of action "is not merely a waivable defense. It operates to deprive federal courts of jurisdiction." *Id.* (citing *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990)).

By including a mechanism in the APA for a person "adversely affected or aggrieved by agency action" to obtain judicial review, Congress has waived sovereign immunity specifically for challenges to final agency decisions. *See id.;* 5 U.S.C. § 702. To fall within this waiver, however, a challenge must be brought within six years of the final agency action allegedly causing a plaintiff's injury.[3] *Dunn-McCampbell*, 112 F.3d at 1287. This means that, to bring a challenge to an original agency action adopting a regulation like FWS's listing of the Bone Cave harvestman, plaintiffs must bring their claims within six years of the publication of the rule—here, FWS's 1988 decision to add the harvestman to the endangered species list (or at least the 1993 decision to list harvestman as a separate species).[4] *See id.*

This court held in *Dunn-McCampbell*, however, that a plaintiff who misses this window may still obtain effective review of the regulation by instead bringing a challenge within six years of a later final agency action that applies the regulation to the plaintiff. *See id.* ("[A]n agency's application of a rule to a party creates a new, six-year cause of action to challenge to [sic] the agency's constitutional or statutory authority." (citing *Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir. 1985); *Wind River Mining Corp. v. United States*,

---

[3] As the district court noted, because the APA does not contain its own statute of limitations, the general six-year statute of limitations for civil suits against the United States applies to APA claims. *Dunn-McCampbell*, 112 F.3d at 1286 (citing 28 U.S.C. § 2401(a)).

[4] This is the only time in which a plaintiff may bring a challenge to a regulation based on the procedures by which it was adopted. *See Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990).

946 F.2d 710, 715 (9th Cir. 1991); *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990))).  An agency applies a regulation to a party when it, for example, issues an order requiring a plaintiff to comply with the regulation, imposes a fine or other sanction against the plaintiff for violating the regulation, or denies a plaintiff's petition to rescind the regulation.  *See id.*

In the present case, the Intervening Plaintiffs argue that, by denying the petition to delist the Bone Cave harvestman, FWS engaged in a new final agency action that reaffirmed the validity of the listing and restarted the clock on the six-year statute of limitations to challenge the listing.  As an initial matter, it is not totally clear that the delisting petition at issue in this case was equivalent to the kind of petition to rescind a regulation contemplated in *Dunn-McCampbell*.  16 U.S.C § 1533(a)(1) lays out the five substantive, fact-based factors that FWS may consider when choosing to list or delist a species.  The petition in this case argued that, under these factors, the Bone Cave harvestman either never warranted listing in the first place or had recovered sufficiently enough that listing was no longer warranted.  The petition did not argue that the listing was unconstitutional, and, had the delisting petition been granted, the effect of delisting the Bone Cave harvestman would likely not be the same as rescinding the original listing on constitutional grounds.  For example, individuals who violated the prohibition on taking Bone Cave harvestmen during the time the species was listed would still be prosecutable if the species were delisted on statutory grounds, but they likely would not be prosecutable if the original listing were rescinded as unconstitutional.  *Cf. United States v. Goodner Bros. Aircraft*, 966 F.2d 380, 384-85 (8th Cir. 1992) (holding that convictions based on violations of invalidated regulation must be reversed because regulation was "void ab initio").  Thus, it is not totally clear that the denial of the delisting petition opened the Bone Cave harvestman listing to attack on constitutional grounds in the first place.  *See National Ass'n*

*of Reversionary Property Owners v. STB*, 158 F.3d 135, 141-42 (D.C. Cir. 1998) (discussing limits on when a subsequent agency decision "reopens" a previous decision to challenge).

In any event, assuming the Intervening Plaintiffs are correct that the delisting petition is equivalent to a petition to rescind the Bone Cave harvestman listing, the district court's vacatur of FWS's denial of the petition nevertheless renders their appeal nonjusticiable for two reasons. First, even if the Intervening Plaintiffs were correct that the denial of the petition simply restarts the clock and allows a plaintiff to challenge the original listing of the species, the petition would no longer be "denied" following the vacatur ordered by the district court, and the clock would therefore no longer be restarted. *See Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) (noting that "vacatur restores the status quo before the invalid [agency action] took effect").

On a more basic level, however, the Intervening Plaintiffs misconstrue the holding of *Dunn-McCampbell* and the cases that it relied upon. A final agency action that applies a regulation to a particular plaintiff does not restart the clock on a challenge to the original enactment of the regulation. Rather, *Dunn-McCampbell* "merely stand[s] for the proposition that an agency's application of a rule to a party creates a new, six-year cause of action" to challenge *that specific application of the rule*. 112 F.3d at 1287. It is incidental that the new cause of action implicates the same question of law—whether the regulation is valid—as a challenge to the original listing. Following the vacatur, there is no new agency action to challenge, and in the absence of "some [new] direct, final agency action involving the particular plaintiff," the Intervening Plaintiffs may trace their alleged injuries only to FWS's original

listing of the Bone Cave harvestman, to which challenges are jurisdictionally time-barred.[5] *Id.*

The Intervening Plaintiffs argue that vacatur and remand does not moot an appeal when a plaintiff has requested and been denied additional relief beyond the vacatur because the plaintiff has received only "half a loaf." However, the cases the Intervening Plaintiffs rely on deal exclusively with the special statutory judicial review provision of the Social Security Act, which permits a court to "modify[] or revers[e] the decision of the [agency] with or without remanding the cause for a rehearing." *Forney v. Apfel*, 524 U.S. 266, 269 (1998) (quoting 42 U.S.C. § 405(g)); *Bordelon v. Barnhart*, 161 F. App'x 348, 351 (5th Cir. 2005) (unpublished). No comparable provision exists in the APA or Endangered Species Act that would have permitted the district court to modify or outright reverse FWS's 90-day finding. And, even if the district court was empowered to reverse FWS's decision, the result would not be the delisting of the Bone Cave harvestman, but rather simply a positive 90-day finding—an outcome that has already come to pass and that does not redress the Intervening Plaintiffs' alleged injuries.

In sum, if the Intervening Plaintiffs' claim is construed as a challenge to the denial of the delisting petition, their appeal is moot because the denial has been vacated and it therefore can no longer be the cause of any of the Intervening-Plaintiffs' alleged injuries. If it is instead viewed as a challenge to FWS's original listing of the Bone Cave harvestman, the challenge is barred by sovereign immunity because it was not brought within the six-year statute

---

[5] Specifically, the Intervening Plaintiffs allege that they are burdened by the continued listing of the Bone Cave harvestman because they, for example, cannot develop their property without obtaining take permits and must take costly affirmative steps to preserve the species. These alleged continuing injuries are a result of FWS's original listing of the Bone Cave harvestman, not of FWS's no-longer-effective denial of the delisting petition.

No. 19-50321

of limitations period applicable to claims brought under the APA. We therefore conclude that we lack jurisdiction to resolve this appeal.[6]

**\* \* \***

Based on the foregoing, we DISMISS the appeal for lack of jurisdiction.

---

[6] Because mootness and/or sovereign immunity are independently sufficient to deprive this court of jurisdiction, we do not reach the Government's alternative arguments that the remand was not a final judgment subject to appeal, that the APA does not provide a jurisdictional basis for the relief the Intervening Plaintiffs seek, that the district court erred by allowing the Intervening Plaintiffs to intervene, and that the district court's determination as to the constitutionality of the Bone Cave harvestman listing was correct on the merits.