Israel **FRAGA** and Patricia Fraga, By and Through their legal Guardian, and next Friend, Carmen **FRAGA**, Jose Fraga, and Dionisio Carrasco, By and Through his mother and next friend, Magdalena Carrasco, Maria Reyna and Joaquin Gutierrez, individually and on Behalf of all others similarly situated, Plaintiffs,

v.

William F. **SMITH**, Alan C. Nelson, and Robert Krueger, each in his official capacity as officers of the United States, Defendants.

Civ. No. 82–1148–BE.

United States District Court, D. Oregon.

April 19, 1985.

D. Michael Dale, Oregon Legal Services Corp., Ontario, Or., Ira R. Zarov, Oregon Legal Services Corp., Portland, Or., Richard Ginsburg, Ginsburg, Gomez & Neal, Hillsboro, Or., for plaintiffs.

Charles H. Turner, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, Or., for defendants.

## OPINION

BELLONI, District Judge:

This case is currently before me on cross-motions for summary judgment. Upon review of the record, I find that the plaintiff class should be decertified as to some issues, but that partial summary judgment in favor of plaintiffs is appropriate on certain other issues.

### Background

Plaintiffs brought this class action seeking declaratory and injunctive relief for delays in processing N–600 applications for certificates of citizenship. Plaintiffs claim they are foreign-born children of United States citizens. If certain residence and familial relationship requirements are met, plaintiffs are legally citizens of this country. To obtain proof of their citizenship, plaintiffs must apply to the United States Immigration and Naturalization Service ("INS") for a certificate of citizenship on an N–600 application form. The plaintiff class consists of those persons whose N–600 applications have been pending for more than 90 days. The defendants are officers of the United States Department of Justice and the United States Immigration and Naturalization Service.

To understand the issues raised in this case, it is necessary to briefly review the procedure used by INS in evaluating N–600 applications. The parties agree that an N–600 applicant has the burden of establishing his entitlement to a certificate of citizenship by a preponderance of the evidence. The parties also agree on the basic procedure followed by INS in reviewing an N–600 application. When an N–600 application is filed in Portland, it is routed to the file room, and then on to an applications clerk in the Adjudications Section. The clerk checks to assure that the fee is paid and that all required documents are included with the application. This preliminary screening process takes approximately 20–30 minutes.

If the applications clerk determines that all documents are present, the application is filed for scheduling and examination. If further documentation is required, the applicant is requested to furnish those documents. If the applicant is requested to submit a document and does not do so, the case may be closed administratively for failure to prosecute. If the missing document may be found in another existing file, INS will attempt to obtain the file itself. In rare instances, INS may request

an investigation into one or more elements of the applicant's eligibility. Delays of 6 months to a year are common when a file has been requested from another office of INS, and in some cases even longer delays are experienced.

Once the applications clerk determines that the application is complete, the next step in adjudicating the application is an examination by an INS officer. The examination takes between 45 minutes and an hour. The purpose of the examination is to question the applicant to assure that he is the person named in the application and that his oral testimony is consistent with the documentary evidence submitted.

If the application is ready for a final recommendation at the conclusion of the examination, the examiner recommends approval or denial. The application is then submitted to the District Director who will usually concur with the examiner's recommendation. If an N–600 application is formally denied, the applicant may appeal administratively to the Associate Commissioner for Examinations. If the administrative appeal is unsuccessful, an applicant may file an action in the United States District Court.

At Portland INS, the examiner will usually not deny the application; instead, if the examiner feels that the applicant has not met the burden of showing entitlement to the certificate, the examiner will request the applicant to submit additional proof. If the additional proof is not submitted, the application may then be administratively closed, without prejudice. Portland INS administratively closes cases when applicants fail to provide "primary" evidence of facts necessary to prove citizenship, without ever advising applicants that other "secondary" evidence is also admissible. (Primary evidence includes e.g. birth certificates and marriage certificates; secondary evidence includes baptismal records, school records, employment records, etc.). During the fiscal years 1978 through 1983, 87.3% (1594) of the applications for certificates of citizenship received in the Portland INS office were approved, 0.4% (7) were denied, and 12.3% (224) were closed administratively.

Plaintiffs contend INS has unreasonably delayed action on their applications. Plaintiffs also contend that the manner in which INS processes N–600 applications has denied plaintiffs adequate procedural safeguards. Plaintiffs claim that the procedures used by INS and the lengthy delays in issuing decisions on N–600 applications violate the requirements of the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA"), the Immigration and Nationality Act of 1952, 8 U.S.C. § 1101 et seq. ("INA"), and regulations issued under the INA, as well as the Due Process Clause of the Fifth Amendment.

Plaintiffs contend that because they have not been granted certificates of citizenship, and thus are unable to prove their citizenship, they have been denied public benefits such as unemployment compensation and food stamps, and they have been denied opportunities to work. In addition, plaintiffs claim they have been denied many of the rights of U.S. citizenship, such as the right to vote, to sit on juries, and to petition for immigration benefits for their relatives. Plaintiffs have requested the following relief:

1. Within 30 days of receiving an N–600 application, INS should screen the application for completeness and notify the applicant either of any deficiencies in the application and steps needed to complete it, including acceptable sources of secondary evidence, or of a scheduled appointment for examination for the application (which need not be held within the 30-day period).

2. INS should grant, deny, or close 80% of all N–600 applications within 180 days of receipt of the applications. In cases which remain open more than 180 days after filing, INS should within the 180-day period, advise each applicant in writing of the grounds upon which the application cannot yet be approved, or of the steps needed to complete adjudication of the application, and of the applicant's right to request a final appealable deci-

sion based on the evidence currently before INS. Within 60 days of the applicant's request for a final decision, INS should issue an appealable decision in such cases.

3. Closure of a case should be regarded as an appealable, final decision. The decision to close a case administratively should be reached by the District Director in the same manner as a decision denying an application.

4. Whenever the examiner reaches a decision to recommend denial or closure of an application, the examiner should prepare a written proposed decision with the findings of fact based upon the evidence in the applicant's file, and conclusions of law. This recommendation and any adverse evidence should be shared with the applicant, and the applicant afforded an opportunity for rebuttal, prior to the District Director's final decision in the case.

**Unreasonable Delay**

■ The INA provides that upon presentation of adequate proof, an applicant *"shall* be furnished by the Attorney General with a certificate of citizenship ..." 8 U.S.C. § 1452 (emphasis added). This language implicitly requires INS to process N–600 applications with reasonable promptness. In addition, APA § 555(b) provides in relevant part:

"With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

Similar statutory provisions have been held to require the Social Security Administration to provide hearings and Appeals Council reviews within a reasonable time. *See Wright v. Califano,* 587 F.2d 345 (7th Cir. 1978); *White v. Mathews,* 559 F.2d 852 (2nd Cir.1977), *cert. denied* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500; *Caswell v. Califano,* 583 F.2d 9 (1st Cir.1978). The INA and APA provisions cited above require INS to decide N–600 applications within a reasonable time.

■ Many members of the plaintiff class waited several years to obtain a final decision on their N–600 applications. However, the fact that there were delays in processing N–600 applications does not necessarily mean the delays were unreasonable. As the Seventh Circuit noted in *Wright v. Califano,* 587 F.2d at 353, the reasonableness of administrative delays must be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests. The passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since "administrative efficiency is not a subject particularly suited to judicial evaluation ..." *Id.; F.T.C. v. J. Weingarten, Inc.,* 336 F.2d 687, 691–692 (5th Cir.1964).

The defendants maintain that delays in adjudicating N–600 applications were caused by staffing problems beyond Portland INS's control. The defendants also note that some of the delays resulted when applicants did not submit the proper documents or did not notify INS of a change in their address. These problems may explain some of the delay in processing some N–600 applications. Individual N–600 applications were affected to varying degrees by the staffing problems and by applicants' failure to supply INS with proper information.

Defendants note other differences among individual N–600 applications. Individual N–600 applications are subject to different legal requirements. An N–600 application may be used to establish two different claims to citizenship: (1) citizenship derived after birth through marriage or naturalization of a parent; (2) citizenship acquired at birth through descent from a citizen parent or parents. Each type of claim to citizenship is evaluated according to different legal standards. In addition, different legal requirements apply to applicants claiming citizenship derived after birth depending on the date when citizenship was derived. Similarly, the requirements for citizenship acquired at birth vary depending on the date of birth, whether citizenship is claimed through one or both

parents, and whether the applicant is a legitimate or illegitimate child.

In general, an N–600 applicant must establish: (1) proof of birth; (2) proof of the legal relationship between the citizen and his parents; (3) proof of citizenship of his parent or parents; (4) proof of satisfaction of any other conditions, such as prior residence in the United States of the parent or parents, or required periods of residence in the United States of the citizen. The quality and completeness of supporting evidence further affects the amount of time required to process an N–600 application.

■ Defendants point to the differences between individual N–600 applications and request that the plaintiff class be decertified. Fed.R.Civ.P. 23(a) provides that a suit may only be maintained as a class action if certain conditions are met. One of these conditions is that "there are questions of law and fact common to the class." As stated previously, whether delays were reasonable or not depends on more than the amount of time INS needed to process an N–600 application. In this case, the reasonableness of delays depends on the facts of individual N–600 applications. Both plaintiffs and defendants seem to realize this, as most of their arguments focus on what caused delays in processing individual N–600 applications. Because the issue of whether defendants unreasonably delayed processing N–600 applications cannot be resolved without considering questions of law and fact peculiar to individual N–600 applications, the plaintiff class must be decertified as to the unreasonable delay issue.

**Procedural Protections**

Plaintiffs request relief from INS practices which are claimed to have violated plaintiffs' procedural rights. Plaintiffs contend that INS has on several occasions not followed the regulations issued under the INA. *See* 8 C.F.R. § 341. Specifically, some plaintiffs were not given an opportunity to review their files and to rebut adverse evidence before Portland INS decided their applications. Some members of the

plaintiff class also were not given notice when INS administratively closed their N–600 applications. Portland INS concedes that in a few cases it did not follow INS regulations and procedures.

■ Whether defendants violated their own regulations, and what effect this may have had on individual N–600 applications, are again questions which depend on the facts of individual applications. There being no common questions of law and fact, the plaintiff class must be decertified as to this issue also.

Plaintiffs also strenuously object to Portland INS's practice of administratively closing N–600 applications without issuing a final appealable decision. Defendants admit that Portland INS often administratively closes N–600 applications rather than formally deny them. Defendants contend that this practice is authorized by INS procedures and conforms with statutory requirements.

■ Administratively closing cases may sometimes benefit applicants. *See* Defendants' Summary Judgment Memorandum at 27–30. However, applicants have a right to a final decision on the merits of their application, and to the procedural protections which accompany a final decision. *See e.g.* 8 C.F.R. § 341.6.

The APA, 5 U.S.C. § 555(e) requires INS to issue a final written decision. A final decision by INS serves as a basis for later judicial review. It also insures that the decision not to grant a certificate is subject to internal INS review. Defendants may not circumvent this process of review by administratively closing N–600 applications instead of denying them.

Plaintiffs contend that Portland INS has in several cases closed applications without a valid reason. *See e.g.* N–600 applications of Orkney Bell, Peter Friesen, Herminia Guerrero, and Cecil Lewis. Defendants have not contested this. *See* Fed.R.Civ.P. 56(e). Defendants state that if an applicant requests an appealable decision, one will be issued. Defendants' Summary Judgment Memorandum at 29. Defend-

ants also maintain that it is INS's policy and practice to give notice when an applicant's case is closed. Defendants' Reply Memorandum at 2.

Defendants' practice of administratively closing cases affects all plaintiffs. Plaintiffs' objections to this practice are based on issues of law and fact common to the plaintiff class. In addition, the plaintiff class, including individuals whose applications have been closed, is large enough to satisfy the numerosity requirement of Fed. R.Civ.P. 23(a). Finally, there are no genuine issues as to any material fact, so summary judgment is appropriate.

■ The uncontested facts of this case show that plaintiffs' rights to a final decision on their N–600 applications are sometimes frustrated by defendants' practice of administratively closing their applications. To protect applicants' right to internal INS review and to later judicial review, INS must include a brief statement informing applicants of their right to a final appealable decision when INS notifies applicants that their N–600 applications are being administratively closed. The statement should mention an applicant's right to internal INS review and the applicant's right to eventually seek judicial review.

Plaintiffs also contend that INS must give applicants notice of the acceptable sources of proof N–600 applicants will be required to provide. According to plaintiffs, INS should give notice of what is necessary to prove any period of required presence in the United States. Plaintiffs also claim INS should notify applicants of when they may submit secondary evidence, and of what type of secondary evidence is acceptable.

■ Section 552(a) of the APA provides that rules of procedure and substantive rules of general applicability should be published in the Federal Register. A person may not be adversely affected by a rule required to be published if the rule is not published and the person does not have actual knowledge of the rule.

■ The INS has formulated rules about the standards of proof and acceptable sources of proof for N–600 applications. These rules are contained in the Naturalization Examiner's Guide. The rules have not been published in the Federal Register. Instructions printed on the N–600 application forms are not sufficiently clear or detailed to give applicants actual notice of these rules. For instance, the instructions on the N–600 application form contain only a partial list of the secondary evidence INS considers acceptable according to the Naturalization Examiner's Guide.

This issue is appropriate for summary judgment and for classwide relief. Defendants must comply with 5 U.S.C. § 552(a). Rules setting forth the standards of proof and acceptable sources of proof for N–600 applications are "of such a nature that knowledge of [them are] needed to keep the outside interests informed of the agency's requirements in respect to any subject within its competence," and are therefore within the publication requirement. *Appalachian Power Co. v. Train*, 566 F.2d 451, 455 (4th Cir.1977), *quoting United States v. Hayes*, 325 F.2d 307, 309 (4th Cir.1963). Defendants may comply with 5 U.S.C. § 552(a) either by publishing in the Federal Register the relevant sections of the Naturalization Examiner's Guide, or by notifying applicants of the particular standards of proof which apply to their case when a problem arises.

**Conclusion**

Because there are no common questions of law or fact, the plaintiff class is decertified as to the claim that INS unreasonably delayed action on plaintiffs' N–600 applications. The plaintiff class is entitled to summary judgment on two claims that defendants used improper procedures to process N–600 applications. When defendants notify an applicant that the applicants' case has been administratively closed, defendants must include a brief statement informing applicant of his or her right to a final appealable decision. Defendants are also required to comply with 5 U.S.C. § 552(a) and give notice of the standards of proof and accept-

able sources of proof for N–600 applications. Because of the disposition of this case, it was not necessary to consider plaintiffs' Due Process claims.

IT IS SO ORDERED.