Adnan ALKENANI Petitioner,

v.

Angela K. BARROWS, Director, Dallas District Office, Citizenship and Immigration Service, et al.   Respondents.

No. 3–04–CV–1638–BD.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 14, 2005.

Roy Petty, Esq., Law Office of Roy Petty, Dallas, TX, for Plaintiff.

Frank Dounell Able, Assistant U.S. Attorney, Department of Justice, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Petitioner Adnan Alkenani has filed a motion for a hearing on his application for naturalization or, in the alternative, for a writ of mandamus and other relief. For the reasons stated herein, the motion is denied.

I.

Petitioner, a native and citizen of Iraq, entered the United States in 1995 after spending more than four years in a Saudi refugee camp.[1] He became a legal permanent resident on June 20, 1995. (Trial Stip. 1). Thereafter, on December 15, 2000, petitioner submitted a Form N–400 application to become a naturalized citizen. (Trial Stip. 2; Resp. Exh. 2). On October 15, 2002, petitioner was interviewed by an immigration examiner, passed an English proficiency test, and demonstrated his knowledge and understanding of United States history and government. (Resp.Exh. 3). At the conclusion of the interview, action on his application was deferred pending the receipt of arrest records and court disposition records related to a 1996 arrest on outstanding traffic warrants. The immigration service also requested a clearance letter from the Dallas Police Department. (See id.). Petitioner was warned that the failure to provide the requested documentation by November 12, 2002 "may result in the denial of your application." (Id.).

In response to this request, petitioner submitted a letter showing that he had successfully completed all required actions related to his 1996 traffic offenses. However, he did not provide a police clearance letter from the City of Dallas. Instead, petitioner submitted the results of a Dallas County felony record search and a letter from the City of Dallas Municipal Court indicating that records prior to 1997 were unavailable. Petitioner also furnished a document reflecting an unpaid fine in the amount of $310.00 for a 1991 traffic ticket. Without a police clearance letter, the immigration service determined that petitioner could not meet his burden of establishing "good moral character." (Resp.Exh. 4).[2] His application for naturalization was

---

1. Petitioner was admitted to the United States as a refugee because of his opposition to Saddam Hussein and the Iraqi Ba'ath Party.

2. In order to be eligible for naturalization, an alien must establish that he "has been and continues to be a person of good moral character, attached to the principles of the constitution of the United States, and favorably

denied on January 27, 2003. (Trial Stip. 3; Resp. Exh. 4).

On February 24, 2003, petitioner, through his attorney, timely appealed the denial of his application to the Dallas District Director. (Trial Stip. 4; Resp. Ex. 5). A "five-year" clearance letter from the Dallas Police Department was submitted along with his request for a hearing. (Resp.Exh. 6). In his brief, petitioner explained that he twice tried to obtain a police clearance letter but was told that such letters are issued only to persons who have not been arrested by the department. Because petitioner had been arrested for a traffic offense, the Dallas police gave him a copy of his arrest record instead of a clearance letter. Petitioner, in turn, provided this record to the immigration service. Although the police would have issued a limited clearance letter covering a five-year period, such a letter was never requested by immigration authorities. Through the efforts of his attorney, petitioner was finally able to convince the Dallas Police Department to issue a limited clearance letter in this case. (Resp.Exh. 5).

Petitioner appeared for a *de novo* hearing before a senior immigration examiner on November 5, 2003. (Trial Stip. 5; Resp. Exh. 7). At the conclusion of the hearing, his application for naturalization was taken under advisement pending the results of a criminal background check.[3] Petitioner was told that the immigration service "constantly monitors the progress of the required checks and has instituted new procedures to insure that all applications are completed in a timely manner." (Resp.Exh. 8). However, because background checks are performed by an outside agency, the district director advised petitioner that she was unable to predict when his case will be approved. (*Id.*).

On July 28, 2004, more than three years after he initially applied for naturalization and nearly nine months after his appeal hearing, petitioner filed this suit in federal district court. Respondents are Angela K. Barrows, Director of the Dallas District Office of Citizenship and Immigration Services ("CIS"), and other CIS officials.[4] As relief, petitioner seeks a hearing on his application for naturalization pursuant to 8 U.S.C. § 1447(b) or, in the alternative, a writ of mandamus requiring respondents to adjudicate his application by a date certain. Petitioner also seeks an order enjoining any further unreasonable delays and declaring the actions of immigration officials unlawful. The issues have been

disposed toward the good order and happiness of the United States." 8 C.F.R. § 316.2(a)(7).

3. Under current federal regulations, a full criminal background check must be completed before the initial examination of an applicant for naturalization. This includes:

(1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or criminal record;
(2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or criminal record; or
(3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD–258) have been determined unclassifiable for the purpose of

conducting a criminal background check and have been rejected.

8 C.F.R. § 335.2(b). It is unclear whether the immigration service conducted a background check before petitioner's initial interview on October 15, 2002.

4. Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist and its functions were transferred to three agencies within the newly-created Department of Homeland Security. *See generally*, HOMELAND SECURITY ACT, Pub.L.No. 107–296, 116 Stat. 2135 (2002). The function of adjudicating naturalization petitions was transferred to the Bureau of Citizenship and Immigration Services ("CIS"). *See* 6 U.S.C. § 271(b)(2) & (3).

fully briefed by the parties and this case is ripe for determination.

## II.

A lawful permanent resident alien may be naturalized as a United States citizen if he meets the five-year statutory residency requirement, has resided continuously in the United States from the date of his application to the time of admission as a citizen, and is of good moral character. *See* 8 U.S.C. § 1427(a). Under the statutory scheme, the naturalization process commences with filing a Form N–400 application for naturalization. *Id.* § 1445(a); 8 C.F.R. §§ 334.2 & 316.4. The immigration service then conducts a background investigation of the applicant, including a review of all pertinent immigration and police records. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. Next, the applicant is interviewed by an examiner who is authorized to grant or deny the application. 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3. If the application is denied, the applicant may request an administrative hearing before a senior immigration examiner. 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2. The hearing must be conducted promptly, no later than 180 days from the date the appeal is filed. 8 C.F.R. § 336.2(b). If the examiner upholds the denial, the applicant may seek a *de novo* review in federal district court. 8 U.S.C. § 1421(c); 8 C.F.R. § 336.9(b) & (c).

While an applicant must generally exhaust administrative remedies before seeking judicial review, there is a narrow exception to this rule in cases where a final decision on the application is not made "before the end of the 120–day period after the date on which the examination is conducted under [section 1446] ..." 8 U.S.C. § 1447(b); *see also* 8 C.F.R. § 335.3. In such cases, the applicant may apply to the United States district court in the district where he resides for a hearing on the naturalization application. 8 U.S.C. § 1447(b). The court may either determine the application itself or remand the matter to immigration authorities with instructions. *Id.*

### A.

■ Respondents first contend that this court lacks subject matter jurisdiction because petitioner has not exhausted his administrative remedies under 8 U.S.C. § 1447(b). In support of this argument, respondents rely on a federal regulation limiting judicial review to "final" agency decisions. *See* 8 C.F.R. § 336.9(b) ("[A]n applicant shall file a petition for review in the United States district court having jurisdiction over his or her place of residence ... within a period of not more than 120 days after the Service's final determination."). However, this regulation, by its terms, applies to judicial review of *denial determinations* on applications for naturalization under 8 U.S.C. § 1421(c). *See also Li v. INS*, 2003 WL 102813 at *4 (S.D.N.Y. Jan. 10, 2003) (applicant must exhaust administrative remedies before seeking judicial review under section 1421(c)). Here, petitioner is not challenging the denial of his naturalization application. Rather, he seeks judicial intervention pursuant to 8 U.S.C. § 1447(b) because the immigration service has yet to decide his appeal. Under these circumstances, there are no administrative remedies to exhaust.

### B.

■ Nevertheless, the court determines that section 1447(b) relief is not available to petitioner. This statute applies only "[i]f there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section ..." 8 U.S.C. § 1447(b). Section 1446 governs the initial examination of applicants for naturaliza-

tion. Administrative appeals from denial determinations, like the appeal at issue in this case, are governed by 8 U.S.C. § 1447(a).[5] The court is unaware of any statute which authorizes a *de novo* hearing on a naturalization application in federal district court while a section 1447(a) appeal is pending.

## III.

In the alternative, petitioner seeks a writ of mandamus and other extraordinary relief to compel respondents to adjudicate his application within a reasonable time. Respondents counter that the court lacks subject matter jurisdiction and that such relief is not proper in any event.

### A.

■ The Administrative Procedures Act ("APA") provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This includes judicial review to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). *See also Brock v. Pierce County,* 476 U.S. 253, 260 n. 7, 106 S.Ct. 1834, 1839 n. 7, 90 L.Ed.2d 248 (1986) (noting that APA permits district court to compel agency action); *United States v. Popovich,* 820 F.2d 134, 137 (5th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (same). The APA, standing alone, does not provide a basis for the exercise of subject matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). However, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld. *Sierra Club v. Glickman,* 156 F.3d 606, 617 (5th Cir.1998) (holding that suit to compel agency action could be brought under APA); *see also Hu v. Reno,* 2000 WL 425174 at *1 (N.D.Tex. Apr. 18, 2000); *Yu v. Brown,* 36 F.Supp.2d 922, 933 (D.N.M.1999); *Sze v. INS,* 1997 WL 446236 (N.D.Cal. July 24, 1997); *Fraga v. Smith,* 607 F.Supp. 517, 521 (D.Or.1985).

■ The waiver of sovereign immunity under the APA is not absolute. An aggrieved person may not sue a federal agency when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Stockman v. Federal Election Comm'n,* 138 F.3d 144, 153–54 (5th Cir.1998). Respondents argue that "[n]o federal statute or regulation 'prescribes' any 'normal period' for acting on naturalization applications, nor requires the immigration services [sic] to act within a limited period of time." (Resp. Ans. at 5). Although immigration officials are vested with broad discretion in making the ultimate decision whether to grant or deny an application for naturalization, they have a non-discretionary duty to process the application within a reasonable time. *Fraga,* 607 F.Supp. at 521. *See also Hsieh v. Kiley,* 569 F.2d 1179, 1182 (2d Cir.), *cert. denied,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978) (visa application); *Nyaga v. Ashcroft,* 186 F.Supp.2d 1244, 1252–53 (N.D.Ga.2002), *vacated as moot,* 323 F.3d 906 (11th Cir.2003) (adjustment of status); *Paunescu v. INS,* 76 F.Supp.2d 896, 901 (N.D.Ill.1999) (immigrant visa and adjustment of status); *Yu,* 36 F.Supp.2d at 931 (adjustment of status); *Agbemaple v. INS,* 1998 WL 292441 *2 (N.D.Ill. May 18, 1998) (same). The court therefore con-

---

**5.** Section 1447(a) provides:

    If, after an examination under section 1446 of this title, an application for naturaliza-

tion is denied, the applicant may request a hearing before an immigration officer.

  8  U.S.C. § 1447(a).

cludes that subject matter jurisdiction is proper under the APA and 28 U.S.C. § 1331.

## B.

■ The Mandamus Act also vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus relief is appropriate "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Giddings v. Chandler,* 979 F.2d 1104, 1108 (5th Cir.1992); *see also Davis v. Fechtel,* 150 F.3d 486, 487 (5th Cir.1998). In the instant case, petitioner must establish: (1) that he has a clear right to have his naturalization application adjudicated; (2) that respondents have a nondiscretionary duty to rule on his application; and (3) that he has no other adequate remedy. *See Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (party seeking mandamus relief must show "clear and indisputable" right and have no other adequate remedy); *Dunn–McCampbell Royalty Interest, Inc. v. National Park Service,* 112 F.3d 1283, 1288 (5th Cir.1997) (duty must be for specific, ministerial act, devoid of discretion); *Hu,* 2000 WL 425174 at *2 (same).

■ The court has already determined that respondents have a clear duty to process petitioner's application for naturalization within a reasonable time. *See also* 5 U.S.C. § 555(b) (agency required to conclude a matter presented to it "within a reasonable time"). Unless and until the immigration service decides his appeal, petitioner remains in perpetual limbo—he cannot become a naturalized citizen or seek judicial review of an adverse decision on his application. It therefore appears that mandamus may be the only remedy available to petitioner. However, the court is not convinced that the 15-month delay in deciding petitioner's appeal is unreasonable under the unique circumstances of this case. The evidence shows that the immigration service is still awaiting the results of a fingerprint comparison, or "name check," on petitioner. This is just one of more than 600 name checks currently being processed by the FBI. Without this information, respondents cannot approve petitioner's application for naturalization. Nor does the immigration service have authority to expedite the FBI investigation or give petitioner priority over background checks requested by other agencies. Unfortunately, delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post–911 world.

■ The court sympathizes with petitioner's plight. As a refugee from an oppressive regime, petitioner is understandably anxious to complete the naturalization process so he can fully enjoy the benefits of United States citizenship. But the court also recognizes that "judicial deference to the Executive Branch is especially appropriate in the immigration context." *INS v. Aguirre–Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999). *See also Zhang v. Slattery,* 55 F.3d 732, 748 (2d Cir.1995), *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996) ("it is not the role of the federal courts to administer the executive branch" in the area of immigration). For that reason, the court declines to use its mandamus or other extraordinary powers to compel agency action at this time. Petitioner may seek appropriate relief from the court if this delay persists.[6]

---

6. Without deciding how long of a delay may be "too long," the court notes that decisions

from other jurisdictions suggest that delays

## CONCLUSION

Petitioner's motion for a hearing on his application for naturalization or, in the alternative, for a writ of mandamus and other relief is denied. By separate judgment issued today, the court will dismiss this case without prejudice.

SO ORDERED.

approximating two years may be unreasonable. *See, e.g. Paunescu,* 76 F.Supp.2d at 902 (2 year delay); *Yu,* 36 F.Supp.2d at 935 (2½ year delay); *Agbemaple,* 1998 WL 292441 *2 (20 month delay).